## Case No. 4,849.

### FLAHERTY et al. v. DOANE et al.

[1 Lowell, 148.] [1]

District Court, D. Massachusetts. March, 1867.

C. G. Thomas, for libellants.

S. H. Phillips, for respondents.

LOWELL, District Judge. The decisions in the circuit court are, that, where the master of a fishing vessel becomes the owner for the voyage, the general owners are not personally liable for such supplies obtained in the home port, as the master had undertaken to furnish at his own expense. Mr. Justice Curtis, in giving his opinion in Mayo v. Snow [Case No. 9,356], refers to the then unpublished decision of the supreme judicial court, Harding v. Souther, 12 Cush. 307, as not being inconsistent with this doctrine, for certain reasons which he gives; and it is not so, though for a different reason, because, as now appears from the authorized report, the master was not in that case owner for the voyage, as he was shown to be in the case in the circuit court. The supreme judicial court construed a certain paper as not amounting to such charter as would exonerate the owners; and the circuit court construed a certain parol agreement to have that legal effect; but the two were not alike. Mr. Justice Curtis, at the conclusion of his opinion in Webb v. Peirce [Case No. 17,321], expressly reserves his decision concerning the right of seamen to proceed against general owners who have received freight earned on the voyage for which the wages are claimed. This case hardly comes within that reservation, in terms, though it may in principle, as I shall hereafter explain. Here the remnants saved from the wreck were not sufficient to reimburse the owners for the

---

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

great general charges; and therefore it cannot be said that they have received any thing in the nature of freight. If, therefore, this schooner had arrived safely at home, but had made a bad voyage, so that the owners were not made whole for their actual outlay, I assume that a personal action could not have been maintained against them for wages, according to the authorities which I am bound to follow, for it is admitted that the master was to pay these wages.

There is, however, a ground on which the seamen may recover the whole or a part of their wages. If the vessel had arrived they would have had a lien on her. No case has ever yet decided that seamen, hired by a charterer, lose their lien on the vessel. The contrary was held in The Adelphi [Case No. 80], if the manuscript report of Judge Sprague's decision, produced at the hearing, is accurate, and I have no reason to doubt it. Admiralty liens depend more on services rendered the ship, than on any question of agency. Where the master is charterer and owner pro hac vice, he may impress the vessel with liens for supplies in a foreign port, Thomas v. Osborn, 19 How. [60 U. S.] 22; and this, although the material-man knows the master has taken her on shares, and is to victual and man her: The Monsoon [Case No. 9,716]. So, in salvage there is usually no contract; and, where there is one, the courts will often disregard it; the lien rests on benefit conferred to the thing benefited; and in salvage there can be no personal action against the owner unless he shall have accepted the property after the service has been performed. And a master de facto can give a valid bottomry bond.

There being then a lien on the ship, and of course on her remnants, and the wreck having been sold before the libellants had an opportunity to enforce their remedy, they may follow the proceeds into the hands of the owners, and maintain their libel to the extent of what I may call the "assets." Proceedings in rem may be maintained, not only where there is a vessel or other thing which can be arrested by the marshal, but also where there is a fund in the possession of persons within the jurisdiction. In England, actions in personam, strictly so called, fell into disuse (The Clara, Swab. 3); but an efficient substitute was found in the process in rem, which was served by a monition to the owners to show cause; and this was issued even though the vessel were on a voyage, or belonged to the crown, and therefore was not liable to arrest; or even in some cases though the vessel had been totally lost (Coote, Adm. 131, etc.; The Trelawney, 3 C. Rob. Adm. 216, note; The Meg Merrilies, 3 Hagg. Adm. 346; The Stephen Wright, 12 Jur. 732). For this reason causes in the admiralty were always entitled as of a vessel or cargo, &c., for they were always in rem. The action in personam has been revived by the admiralty court act of 1861, but this is only a cumulative remedy, as I suppose, in cases where the old practice is applicable, for that practice was expressly sanctioned by the act of 1854.

The practice is not unknown in this country. We often require notice of the action in rem to be served by a simple monition, where there is no danger of loss by that form of proceeding and it is desirable to save the expense of custody. In prize, the court of the captor's country has jurisdiction, though the captured property has been sold abroad; and this is recognized by the prize act of 30th June, 1864, § 1 (13 Stat. 307). So in salvage and bottomry, in which there is usually no personal action against owners, the suit in rem is not defeated by the conversion of the property into money. In Sheppard v. Taylor, 5 Pet. [30 U. S.] 675, money paid by Spain for the wrongful confiscation of a ship, and for the loss of freight was permitted to be followed by a libel in personam, not only into the hands of the owners, but also into those of assignees, with notice. Mr. Justice Story, speaking for the court, says (page 711): "Over the subject of seamen's wages, the court has an undisputed jurisdiction in rem as well as in personam; and wherever the lien for wages exists and attaches upon proceeds, it is the familiar practice of that court to exert its jurisdiction over them, by way of monition to the parties holding the proceeds."

This explains the meaning of Mr. Justice Curtis's reservation in Webb v. Peirce [Case No. 17,321], above mentioned, that he will not say that owners who have received freight earned on a voyage are not answerable in the admiralty for wages; for such owners could be held to answer to the extent of the freight, by reason of the lien upon it.

The twenty-third admiralty rule of the supreme court requires all libels in rem to allege that the property is within the district in which the action is brought. No doubt this modifies the ancient practice so far as to establish the locality of certain actions which otherwise might have been brought in any district where the owners were found. But it cannot have been the purpose of the court to take away a right of action founded on the existence of a fund held by persons within the jurisdiction, and thus to overrule Sheppard v. Taylor by indirection, if that case should be called a suit in rem, which I doubt.

It is not necessary to put the rights of these libellants on the doctrine of salvage, that owners who have accepted the saved goods may be proceeded against in personam. The demand is really for wages, and the right to follow the proceeds into the hands of the owners by a libel is the same in both cases. It would be more regular that a full statement of the case, showing how and to what extent the owners are liable, should be made in the libel; but the trifling amount due in this case will hardly warrant the expense of an amendment; and I have not carefully examined the question whether one would be necessary, because the parties have argued the case on its

merits, without interposing any technical objections. There is reason to suppose, that after advance wages and supplies have been deducted, but little will remain due to the libellants; but that little must be paid, if the proceeds of sale are sufficient.

Decree accordingly.