THE SAMUEL OBER.

(*District Court, D. Massachusetts.* February 23, 1883.)

1. SEAMEN'S WAGES.

    A vessel under charter is liable for the wages of seamen hired by the charterers, although the owner may not personally be liable therefor.

2. SHIPPING CONTRACTS.

    A seaman is not bound by a clause in his shipping contract unfavorable to his interest if it was concealed from him, or its meaning misrepresented; and if, from any cause, he is unable to read the contract, he may show that it differs from his oral engagement, upon clear proof that the written contract was not read or explained to him.

In Admiralty.

*F. Cunningham*, for libelants.

*H. P. Harriman*, for claimant.

NELSON, J. The claimant, Edward E. Small, of Provincetown, chartered the schooner Samuel Ober for a cod-fishing voyage of seven months from May 1, 1882, on the coast of Maine. The libelants, Manuel Francisco, John Francisco, and Manuel Caton, are Portuguese fishermen, living in Provincetown, unable to read or write. They allege that they shipped as fishing hands on the schooner for this voyage, under an oral agreement by which they were to serve for five months from May 1st, and were to receive as wages for such service, respectively, $250, $240, and $210. They left the vessel October 2d, at South-west Harbor, Mount Desert, after having served five months, and now sue for their wages according to the verbal contract. The shipping articles fix their wages at the sums stated, and contain this clause written in below the printed part, above the signatures of the men:

"And it is further agreed that the fishermen, whose names are to this agreement subscribed, shall continue in said schooner Samuel Ober during the time for which she is chartered, viz., seven months from May 1, 1882, and shall receive the following wages or lay; providing, however, that if they should leave the vessel for any other reason, excepting sickness, before the expiration of seven months from May 1, 1882, this contract shall be null and void, and they shall receive a *pro rata* amount of wages at the rate as follows."

Below the signatures is a memorandum, written in after the men had signed, as follows:

"Now, providing the above-named crew shall continue in the said vessel for seven months, they shall receive the above wages for five months, and one-half for what they make in the other two months, less their proportionate part of the whole expense of the voyage; but, as before agreed, should they leave the vessel before the expiration of seven months, they shall receive one-seventh of the amount for which they have shipped for every month engaged."

The libelants allege that they signed the shipping articles, supposing that they contained the verbal agreement; that the written parts were not read to them; and that they were induced to sign them as they now appear by the fraud of the claimant.

A vessel under charter is liable for the wages of seamen hired by the charterer, although the owner may not personally be liable therefor. *Flaherty* v. *Doane,* 1 Low. 148; *The Adelphi,* an unreported decision of Judge SPRAGUE, cited by Judge LOWELL in *Flaherty* v. *Doane.*

A seaman is not bound by a clause in his shipping contract unfavorable to his interest, if it was concealed from him or its meaning misrepresented; and if from any cause he is unable to read the contract, he may show that it differs from his oral engagement upon clear proof that the written contract was not read or explained to him. *Wope* v. *Hemmenway,* 1 Spr. 300; *The Quintero,* 1 Low. 38. But I am convinced, after a careful examination of the conflicting evidence, that the shipping articles correctly state the contract made by the libelants with the charterer. The evidence wholly fails to show that he was guilty of any unfair or dishonest conduct towards these men. The whole contract, including the written parts, was read and carefully explained to them. The clause inserted after the signatures was written in their presence, and was read to them. It was intended as an additional inducement for them to remain with the vessel after the expiration of the five months. It certainly was for their benefit, since it gave them a half-line share in the catchings for the last two months of their service, in addition to their round wages. The claimant had hired the vessel for a seven months' voy-

age, and she was not to return to Provincetown until the end of the voyage. Under such circumstances, it is highly improbable that he would have engaged a crew for round wages for five months only. As it was, owing to the advanced state of the season when the libelants left, the skipper was unable to procure men at South-west Harbor to take their places, and in consequence the voyage was broken up. The amount of the stipulated wages also indicates that seven months was the agreed length of the service. The evidence showed that from $30 to $40 a month is what is usually earned by fishermen on voyages such as this.

The libelants, although illiterate, are not unintelligent. They converse readily in English. They have lived for many years in Provincetown, and are familiar with its peculiar usages. They knew as well as their neighbors what a fishing contract means. When they heard this contract read, they must have comprehended its terms, and must have known that it took the place of any previous verbal arrangement which they may have made with their employer. I think it is quite clear that they understood their contract to be that expressed in the shipping articles. The amounts due them, after deducting the sums advanced during the voyage, are correctly stated in the answer. As these sums were tendered and refused before suit brought, the libelants are not to recover costs.

One other matter should be adverted to. This is a proceeding against the vessel. A warrant of arrest was issued, and she was seized and held by the marshal until released, upon the claimant's giving the usual stipulation, with sureties, to abide the final decree. A very considerable expense was thus incurred. The amounts involved in the suit are small. The claimant lives in this district, and is of ample pecuniary responsibility; and this was known to the libelants and their proctor. The libelants should have proceeded against the claimant *in personam*. There was no occasion to incur the expense of the arrest and detention of the vessel. This expense was wholly unnecessary. If I had given costs to the libelants, I should have allowed for the service of the warrant of arrest only the cost of serving the claimant with a simple monition to appear and answer the suit.

Decrees are to be entered for the libelants, without costs, as follows: For Manuel Francisco, $111.75; for John Francisco, $140.60; for Manuel Caton, $57.32. Ordered accordingly.