## STETSON v. AMERICAN HAWAIIAN S. S. CO. et al.

### No. 3483–RJ.

District Court, S. D. California, Central Division.

June 18, 1945.

David A. Fall, of San Pedro, Cal., for libelant.

Overton, Lyman & Plumb and L. K. Vermille, all of Los Angeles, Cal., for respondent American Hawaiian S. S. Co.

Charles H. Carr, U. S. Atty., and Ronald Walker, Asst. U. S. Atty., both of Los Angeles, Cal., for respondent United States.

YANKWICH, District Judge.

The above entitled action came on regularly for trial on the 24th day of May, 1945, before Hon. Leon R. Yankwich, United States District Judge, the libelant being represented by David A. Fall, Esq.; respondent American Hawaiian Steamship Company being represented by Messrs. Overton, Lyman & Plumb and L. K. Vermille, Esq.; and respondent United States of America being represented by Charles H. Carr, Esq., United States Attorney, and Ronald Walker, Esq., Assistant United States Attorney; and evidence, oral and documentary, having been introduced, and the Court having considered the evidence and the law and the arguments of counsel, and being fully advised in the premises, and all proceedings having been duly and regularly taken, the Court makes the following findings of fact and conclusions of law:

### Findings of Fact

I. That libelant was an able bodied seaman on board the Steamship "Daniel Boone," having signed thereon on or about the 25th day of April, 1942, for a voyage not to exceed twelve months bound for foreign ports unnamed.

II. That the United States of America was the owner of the Steamship "Daniel Boone", and the American Hawaiian Steamship Company was acting as general agent for the War Shipping Administration in the operation thereof.

III. That libelant on or about the 5th day of June, 1942, while in the service of said Steamship "Daniel Boone," sustained injuries of a minor nature and was taken to a hospital at Melbourne, Australia, on or about the 8th day of June, 1942.

IV. That after the Steamship "Daniel Boone" left libelant at Melbourne, Australia, on or about the 8th day of June, 1942, it made two bonus port calls at the Port of Townsville, Australia, and one bonus port call at the Port of Moresby, for which each able bodied seaman on board the Steamship "Daniel Boone" was paid the sum of $125 for each of said bonus ports, making a total of $375.

V. That libelant did not rejoin the Steamship "Daniel Boone" for the completion of her voyage but was repatriated to the United States of America on board another vessel, having signed thereon as a crew member, and received payment for all bonus ports while on board said vessel; that when libelant arrived in the United States he had completely recovered from his injuries; that the Steamship "Daniel Boone" terminated her voyage at Baltimore, Maryland, on or about the 2nd day of December, 1942.

VI. That the Shipping Articles signed by libelant for the voyage on board the Steamship "Daniel Boone" provided for the payment of his wages at the rate of $100 per month and war bonuses in accordance with the United States Maritime War Emergency Board Decisions; that when a seaman enters into an agreement that bonuses shall only be paid in accordance with the United States Maritime War Emergency Board Decisions he realizes that bonuses are not a matter of right except insofar as they are regulated by these decisions, which may change from time to time; that bonuses are inducements earned at various times under the direction of the Maritime War Emergency Board Decisions in order to compensate for the greater or lesser hazards to seamen; that libelant, in signing the Articles, agreed that the decisions of the Maritime War Emergency Board shall be the criterion as to whether or not he is entitled to receive bonuses; that it is quite evident, in the established system of bonuses, the Maritime War Emergency Board sought to supply an additional incentive for the taking of the risk; that the Board did not enter into an agreement to the effect that no matter what happened to the particular seaman whether he actually continued on the ship or separated himself from the ship that he was entitled to all the emoluments and all the compensation he might have received had he stayed with the ship.

VII. That libelant was paid the sum of $462.55 for his full wages, voyage bonuses, overtime and port bonuses while on board the Steamship "Daniel Boone", and in addition thereto the further sum of $283.33 for a full and complete release of any and all claims and demands for additional wages, voyage bonuses, overtime, port bonuses, maintenance, cure, transportation and subsistence.

VIII. That on January 8, 1943, libelant called at the office of the American Hawaiian Steamship Company in connection with payment of wages, overtime, voyage bonuses and port bonuses, maintenance, transportation and subsistence which he claimed to be due after he had left the steamship "Daniel Boone," and he fully discussed his claim with the claims agent of the American Hawaiian Steamship Company, at which time libelant was shown a copy of a letter sent to him by the Maritime War Emergency Board in reply to a letter he had sent to the Board relative to the payment of war bonuses, advising libelant that in accordance with the Board decisions he was not entitled to bonuses on the return voyage as he had signed on board another vessel as a crew member on his return to the United States.

IX. That on January 9, 1943, libelant again called at the office of the American Hawaiian Steamship Company, at which time his claims were further discussed and a full release was presented to him for his signature after the claims agent had fully explained to him, that if he signed the release he was releasing any and all claims of every nature whatsoever; that libelant is now an officer in the Merchant Marine and from the way he conducted himself in court and from the language he speaks he is a literate person and fully understood the terms of the release. That libelant read the release and wrote thereon, in his own handwriting, the following: "I have read and understand this release," and then signed the release before a

witness and received and acknowledged receipt of $283.33 in consideration therefor. Libelant testified that he understood the contents of the release before he signed it; that the release was executed freely, without deception or coercion, and was made by libelant with the full understanding of his rights and it was a complete release of all liability for the claims set forth in the libel.

### Conclusions of Law

The Court makes the following conclusions of law on the findings of fact:

That the libelant Harold E. Stetson is not entitled to recover any sum whatsoever from the respondents American Hawaiian Steamship Company, a corporation, and the United States of America, or either of them, and that said libel should be dismissed without costs to said respondents.