**STEEVES et al. v. AMERICAN MAIL LINE, Limited.**

**No. 11100.**

Circuit Court of Appeals, Ninth Circuit.
March 13, 1946.
Rehearing Denied April 19, 1946.
Decree Amended June 15, 1946.

Sam L. Levinson, of Seattle, Wash., for appellant.

John Ambler and Grosscup, Ambler & Stephan, all of Seattle, Wash., for appellee.

John Geisness and Bassett & Geisness, all of Seattle, Wash., amicis curiae.

Before DENMAN, STEPHENS, and ORR, Circuit Judges.

DENMAN, Circuit Judge.

Appellants, seamen formerly on the American Steamship Capillo, destroyed by Japanese bombing in Manila, P. I., on December 29, 1941, while on a round voyage from the Columbia River to Asiatic ports and return, appeal from a decree in admiralty denying them recovery from appellee, then owner of the Capillo, for war bonus payments to them after her destruction, for the period while imprisoned by the Japanese and until their arrival in the United States in a Pacific Coast port and for the cost of their repatriation to such a port.

Appellants were freed by an exchange of prisoners with Japan and arrived on the Gripsholm in New York on December 1, 1943. It is stipulated that if appellee has the obligation to transport them to a Pacific Coast port, the value of such transportation for each seamen is $125.00.

The question before us is whether appellee agreed in the Capillo's shipping articles, signed on October 11, 1941 by appellee and each appellant, to pay such a war bonus and to repatriate to a Pacific Coast port. The articles provided, in a rider thereto,

"The American Mail Line agrees to pay an emergency war bonus to the crew of the S.S. Capillo, Voyage Six (6), in accordance with the provisions contained *in the applicable supplementary agreements in effect* between the Pacific American Shipowners' Association and the various Marine Unions.

"In the event the vessel and/or crew be interned, imprisoned, hospitalized or put ashore due to war causes and for that reason, be unable to continue their voyage, the company agrees to pay wages and bonus to the date members of the crew arrive in an United States port, on the Pacific coast; furthermore, the company agrees, in such event, *to arrange for repatriation of such men to a United States port on the Pacific Coast.* Also, that the company be liable for any injuries suffered by any crew member due to war causes.

"The company agrees to reimburse each man so affected by the amount of $150.00 for each member of the crew, against the loss of personal effects as a result of war perils.

"It is further agreed that in the event of any increase in pay, overtime or war bonus or changes in insurance which may be granted, as the result of negotiations

between Union and the Pacific American Shipowners' Association, the company will be governed by the terms and effective date of any agreement so reached."

Appellee contends that the specific provisions of the second paragraph of the rider for a bonus during captivity and until return and for repatriation to a Pacific Coast port are rendered completely nugatory and meaningless because, it is claimed, they are not "in accordance with the provisions contained in the applicable supplementary agreements in effect between the Pacific American Shipowners' Association [of which appellee is a member] and the various Marine Unions" of which appellants were members.

■ In construing the articles we are controlled by the elementary axiom that, if possible we will give effect to specific contractual language rather than to hold it nugatory. Mutual Life Insurance Co. v. Hill, 193 U.S. 551, 558, 24 S.Ct. 538, 48 L.Ed. 788.

One of the seamen was a fireman, two were oilers, and all three members of the Fireman, Oilers, Watertenders & Wipers Union. The fourth was a messboy, a member of the Marine Cooks and Stewards Union. Though without the then knowledge of any of the appellants, anticipated agreements had been entered into between their unions and the Shipowners' Association and were "in effect" just before the articles were signed, the Firemen, Oilers, etc., Union on October 9, 1941, and the Marine Cooks and Stewards Union on October 10, 1941.

The absent factor in appellee's agreement for a war bonus while in captivity and until repatriation is its amount. The two "applicable supplementary agreements" provide for a war bonus of $80.00 per month and it is stipulated that this is the monthly amount due if appellee's agreement of the second paragraph of the rider is any agreement at all.

■ Appellee contends that the two applicable agreements render nugatory the specific agreement of the second paragraph of the rider. Its argument as to the firemen and oilers union agreement, in effect from October 9, 1941, is that it makes no provision for any war bonus during captivity but provides for trans-Pacific voyages for a bonus of $80.00 per month for the period from the crossing of the 180th meridian westbound until the crossing of the same meridian eastbound. The contention is that since the vessel was destroyed and never could return to the 180th meridian, no bonus is due for the period in captivity and until repatriation, though specifically agreed in the second paragraph of the rider.

We do not agree. The pertinent word in the first paragraph of the rider with respect to the second paragraph is the word "applicable" in the phrase "in accordance with the provisions contained in the *applicable* supplementary agreements." Since, if rational, we must construe the second paragraph to give effect to its agreements, we construe the provision of the union agreement for period of bonus during the return voyage of the ship to the 180th meridian as not "applicable" to the specific agreement to pay one during the period of captivity after the ship's destruction in Manila.

The same is true of the cooks and stewards union agreement. There the war bonus period is during the ship's voyage westerly from and easterly to the 180th meridian. It is not applicable to a case of the destruction of the vessel and the subsequent period of captivity and repatriation specifically provided for in the second paragraph of the rider.

It was thought that there was some ambiguity in the provisions of these instruments which warranted testimony as to their meaning. We do not agree. It requires no testimony to make it clear that the union agreements did not provide for the bonus during the period specifically provided in the shipping articles. It is a matter of construction whether such union agreements are applicable to make nugatory the specific agreement for the internment. The stipulation that $80.00 per month is the bonus amount if there was an agreement that a bonus was payable for the internment period determines the only unknown factor of the problem.

■ In December 1941 a meeting was held in Washington of the maritime unions, including the two to which appellants belong, and the shipowners, including appellee. The unions and shipowners agreed on a declaration of principles, among others—

"I. In so far as areas, war bonuses and insurance are concerned, it is regarded as desirable and necessary that a uniform basis for each item covering the entire Nation and the entire Industry be reached."

By a joint voluntary action, the unions and shipowners agreed to the creation of the Maritime War Emergency Board to determine finally disputes which would be subject to collective bargaining between the unions and shipowners.[1] The President created such a Board. In no case was there presented to it any dispute between the two maritime unions here involved and the appellee nor any case involving the private contract of any seamen and any owner, much less one in which the provisions are like those in the instant case.

The district court finds that by the terms of the first paragraph of the agreement in the Capillo's shipping articles, decisions of the Maritime War Emergency Board became applicable to the individual appellants and that "they are bound thereby." The district court states as applicable to them a decision No. 5 of the Board, dated February 21, 1942, which prescribed "compensation to be paid to seamen shipwrecked or interned by war causes. Such compensation included wages and emergency wages until repatriated to a Continental United States port, bonus during the repatriation voyage, loss of effects $150.00 and port bonus $125.00."

The district court seems to consider that such a decision on February 21, 1942, by such a tribunal created by the unions and shipowners by agreement of December 19, 1941, is one of the applicable provisions of the supplementary agreements "in effect" on October 11, 1941. We do not agree. (a) The words "in effect" do not mean "hereafter to be made." (b) The jurisdiction of the Maritime War Emergency Board is confined to differences "between any steamship operator and any union."[2] Here there is shown no dispute between either of appellants' unions and appellee respecting the Capillo's shipping articles. (c) There is no evidence that membership in either of the unions of appellants authorized their unions to submit the question of the interpretation of any of their private contracts with shipowners to the decision of the Emergency Board. (d) The decision No. 5 relied upon by the district court does not purport to apply to cases of specific shipping article agreements between seamen and shipowners, much less to those prior to the agreement of December 19, 1941, when the Board was created.

The decree in so far as it denies the war bonuses after December 29, 1941, and the transport from New York to a Pacific Coast port is reversed. A decree is ordered entered against appellee awarding to each appellant the sum of $80.00 per month for the period from the destruction of the Capillo on December 29, 1941, to December 7, 1943, his arrival at a Pacific Coast port, and to each $125.00 for his transport from New York to such Pacific Coast port.

Reversed.

---

[1] "Whenever any difference shall arise between any steamship operator and any union representing its employees with regard to any question relating to war risk compensation or war risk insurance of personnel of the vessels of such steamship operator and such question shall not be settled through the ordinary procedure of collective bargaining between such steamship operator and its employees, such question shall be referred to the Board by such steamship operator or such union by giving written notice to the Board and to the other party of the intention of the party giving such notice to refer such question to the Board. Such notice shall specify the question to be referred to the Board.

Upon receiving such notice the Board shall as promptly as shall be practicable afford to each party a reasonable opportunity to present evidence and argument in support of the position of such party and the Board shall thereupon render its decision in writing with regard to such question and serve a copy thereof upon each party.

The decision of the Board upon any such question which shall be referred to it as hereinbefore set forth shall be final and binding upon all parties to the difference out of which such question arose."

[2] Footnote 1, supra.