## MONTOYA v. TIDE WATER ASSOCIATED OIL CO.

### No. 174, Docket 21226.

United States Court of Appeals
Second Circuit.

May 5, 1949.

608·

FRANK, Circuit Judge, dissenting.

William L. Standard, of New York City (Louis R. Harolds, of New York City, of counsel and on the brief), for plaintiff-appellant.

John F. X. McGohey, U. S. Atty., of New York City (William T. Ard, Department of Justice, of New York City, of counsel), for defendant-appellee.

Before AUGUSTUS N. HAND, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The appellant signed on at New York as a messman on the appellee's tanker "S.S. William F. Humphrey" which left New York on March 4, 1942 and was sunk on July 16, 1942 by a German raider in the Pacific. He was taken prisoner by the Germans who kept him on their vessel until they turned him over to the Japanese on November 1, 1942. The Japanese held him interned on land from November 1, 1942 until he was liberated by the Americans on August 15, 1945. He was then returned to New York where he arrived on September 18, 1945.

He then demanded of the appellee his base pay plus emergency wages and war bonus for the entire period from his departure from New York until his return to that port. He was paid his basic and emergency wages from November 19, 1942 to the date of his return to New York together with war bonus while on the German raider and repatriation voyage bonus.

The reason why he was not paid for the period before November 19, 1942 was that on that date the Maritime War Emergency Board, after due preliminary proceedings and pursuant to its Decision No. 5 as revised on February 21, 1942, issued a certificate of the presumptive death of the appellant and of other missing members of the crew of the "Humphrey." His name was deleted from the certificate by the Board after his repatriation. Following the issuance of that certificate, the appellee had deposited with the United States Shipping Commissioner in New York the sum, together with a small, inadvertent overpayment, due appellant for basic and emergency wages and bonus up to the date when he was declared presumptively dead. The shipping commissioner had deposited this sum with the United States District Court for the Southern District of New York, and on July 31, 1943, it had been paid to the administrator of the appellant's estate who had been appointed by a court in Louisiana where the appellant had his residence at the time of his presumptive death. The administrator had disposed of the money in such a way that it was lost to the appellant.

The appellant, upon learning the facts as above outlined, demanded from appellee the following: the amounts which had been paid to his administrator, $1248.07, plus double his earned wages for that period which he claimed due under 46 U.S.C.A. §§ 596 and 597 because of the non-payment of those wages to him within the statutory payment period; a bonus, $3,400, for the time he was interned on land and remained on land awaiting repatriation after his liberation; additional compensation of ten per cent of his base pay, $266, claimed due because of his continuous service from the time his vessel was lost until his repatriation; and vacation pay, $223.39, for the same period. The amounts have been

stipulated and only the validity of appellant's claims is contested. The district court held that the appellee had discharged its entire liability to the appellant by paying as it did.

Appellant was, when he signed on in New York, a member of a labor organization called Tide Water Tanker Men's Association which had been certified by the National Labor Relations Board as the exclusive bargaining agent to represent the unlicensed personnel employed in the appellee's ocean-going vessels and had been recognized as such by the appellee. It had entered into a written contract with the appellee concerning wage scales, working conditions and vacation pay together with provisions for peaceful settlement of grievances and disputes. The shipping articles which the appellant signed conformed to the terms of this agreement as it was at the time of signing on so far as they were applicable and there is no dispute on that score.

In dealing with the disputed matters it is necessary to allude to what happened when the appellant signed on. His oral testimony was uncontradicted and was to the effect that those who signed were called into the saloon one by one. The chief mate, the radio operator and a United States Shipping Commissioner were present when his turn to sign came. The articles were not read to him, nor was any part of them shown to him except that portion on which the men signed. The radio operator called his name and when he acknowledged it told him, "Sign your name here." The commissioner told him, "You earn $91.70 and you get $100 bonus until you get back in New York. You get paid until you get back in New York." He signed then without any additional information as to the contents of the articles.

The trial judge found that the appellant's ability to read English was limited; that no one told him he was bound by decisions of the Maritime War Emergency Board and that the shipping commissioner did tell him that he would receive a hundred dollar bonus until he returned to New York. He also found that there was "nothing in the record raising an inference of fraud or imposition upon the plaintiff signing the articles which would release him therefrom, and he accepted payments under the provisions of the rider."[1]

The appellant did not allege any fraud or imposition practiced upon him when the articles were signed and we do not understand that he now questions the court's finding that none was. He has accepted some payments as provided in the articles and now seeks to recover more not, as we understand it, because the articles are void or voidable but because they should be construed as he claims. Thus he claims that the decisions of the Maritime War Emergency Board were not incorporated by reference because they were not called to his attention and that he is entitled to a continuous 100 dollar month bonus until his return to New York because the statement of the shipping commissioner was a part of the contract. Since these contentions do not reach to an avoidance of an express contract or amount to an attempt to obtain compensation on a quantum meruit, we shall lay aside all consideration of appellant's rights in the absence of an express agreement covering the terms of his employment and its consequences.

On this basis, the articles as signed are controlling here under the findings as made below. The bare finding that the shipping commissioner told the appellant "that he would receive a one hundred dollars bonus until he returned to New York" is not sufficient to make that a part of his employment contract. There is no finding that the representatives of the appellee, either tacitly or otherwise, agreed to it. There is no evidence that they knew what the shipping commissioner had said except that they were in the saloon, and even on the assumption that contemporaneous parole statements could be shown to modify the written instrument in this respect[2] the

---

[1] The rider referred to was attached to the first page of the articles and stated that Maritime War Emergency Board Decisions No. 1, dated December 22, 1941; No. 2 with attachments 1, 2 and 3, dated January 10, 1942; No. 3, dated January 20, 1942; No. 4, dated January 22, 1942; No. 5, revised February 21, 1942; and No. 6, dated February 24, 1942, were applicable.

[2] But see Bender v. Waterman S. S. Co., D.C., 69 F.Supp. 15, 19.

610

proof was short and a finding to support appellant's position is non-existent.

■ So the basis for any claim the appellant has to any bonus is the written contract which must be construed according to its terms, including the decisions of the Maritime War Emergency Board which were incorporated in it and are to be considered a part of it. Under those provisions the appellant is not entitled to a bonus for the period he spent on land after his capture. Mason v. Texas Co., 1 Cir., 171 F.2d 559. See also, Stetson v. American Hawaiian S. S. Co., D.C., 63 F.Supp. 24, affirmed 9 Cir., 155 F.2d 359. There was no stipulation for the payment of a bonus during internment as in Steeves v. American Mail Line, Ltd., 9 Cir., 154 F.2d 24. Cf. Agnew v. American President Lines, Ltd., 73 F.Supp. 944.

Nor is the appellant entitled to have the period after his capture counted in computing an increase in his base pay rate or in determining his vacation rights. These are both controlled by the terms of the agreement between the appellee and the appellant's union. That in express terms limited its provisions to unlicensed personnel who were " * * * employed in the large Fleet ocean-going vessels operated by the Eastern Division of the Company and manned by the Company and in active service, * * * " After the "Humphrey" was sunk neither the appellant nor the vessel was in active service. And thereafter appellant's regular employment was terminated. 46 U.S.C.A. § 593.

■ The claim for appellant's earned wages which were deposited with the shipping commissioner rests upon an additional reason advanced to show that he is not bound by what was done pursuant to the decisions of the Maritime War Emergency Board. When its Decision No. 5, which is pertinent, was incorporated by reference in the shipping articles it provided for the declaration of presumptive death which was issued by the Board in respect to the appellant at the option of the shipowner as provided in the decision. But it did not until a ruling on December 26, 1942 expressly provide for the disposition of wages due

the seaman at the date of his presumptive death as declared. It is argued from this fact that the appellant cannot be bound by the changes in the decision made after he signed on. For present purposes we make that assumption. The changes were, however, in accordance with the provisions of the statute respecting the disposition of the wages of deceased seamen which were in effect at all pertinent times. 46 U.S.C.A. §§ 626, 627. Since the appellant had agreed that in the event of happenings which did occur he might be declared presumptively dead, he was bound by the disposition made of his wages in accordance with the statute and the fact that what was done also complied with the terms of a ruling on the decision which may not have bound him is immaterial.

What has been said disposes, of course, of the claim for penalties which are due only if there is a failure to pay wages without sufficient cause. 46 U.S.C.A. § 596.

Affirmed.

FRANK, Circuit Judge (dissenting).

46 U.S.C.A. § 565, enacted in 1872, provides that the articles "shall be signed * * * in the presence of a shipping commissioner" whose duty it is to see that the seaman is "made acquainted with the conditions thereof, and understood the same."[1] A statute along those lines had been proposed twelve years earlier in Dooley v. The Neptune's Car, 1860, Fed.Cas.No.3,997, to prevent the not uncommon practice of signing up seamen who were illiterate, or "unable to read the articles," and to whom they were not explained. The statute was patently intended to do away with that evil. Obviously, the statutory obligation of the Commissioner was not intended to provide an idle ceremony.

In the instant case, the plaintiff was unable to read English with any facility. He did not read the articles. The Shipping Commissioner, so the trial judge found, "told him that he would receive a one-hundred dollars bonus until he returned to New York." The articles did not so provide. In those circumstances, I think the authorities require us to hold that the ar-

---

[1] See also §§ 542 and 545.

ticles did not bind the appellant, that as a result, no contract resulted from his signing them, and that he is entitled to recover in quantum meruit.

Long ago, it was held that one who signs a document, which he is unable to read, relying without negligence upon the innocent, non-fraudulent misinterpretation of it by a third person, is not bound by it. See Thoroughgood's Case, 2 Coke 9a (1852), 76 Eng. Rep. 408. That case has often been cited with approval.[2] We recently applied that doctrine in Ricketts v. Pennsylvania, 153 F.2d 757, 759, 164 A.L.R. 387,[3] where, as in Thoroughgood's Case, there was non-negligent reliance upon the non-fraudulent advice of a third person.

The authorities I have cited did not relate to seamen. A fortiori, should the doctrine apply to a seaman, a "ward of admiralty,"[4] especially where, as here, he had a statutory right to rely upon the words of the Commissioner. Even aside from a statute, the courts have held a seaman not bound where he signed articles without full knowledge of their contents.[5] Proof of fraud (or "imposition") is not required,[6] particularly where there was a "failure to read [the articles] to the seaman pursuant to law."[7] That the union of which plaintiff was a member agreed to terms to be included in seamen's contracts is not here material, I think. For each contract with each seaman is several, Oliver v. Alexander, 6 Pet. 143, 8 L.Ed. 349; and the general understanding with the union could not, I think, over-ride the statutory right of plaintiff to be specifically informed by the Commissioner about the contract provisions.

In such circumstances, plaintiff should recover in quantum meruit.[8] The measure of recovery is, I think, indicated in 46 U.S. C.A. § 575, i. e., "the highest * * * wages * * * given * * * for a similar voyage, within three months next before the time of * * * shipping."

My colleagues seem to suggest that his quantum meruit claim is barred because he did not seek relief on that ground. But his complaint alleged no contract; it said merely that "he was in the employ of the defendant aboard said vessel, as a merchant seaman."[9] Nor is he barred because he received some part of what is due him.

If I am correct (i. e., if there was no contract), appellant has no claim to a contractual bonus;[10] nor, on the other hand, is he bound by the provisions, incorporated by reference in the writing, relating to his presumptive death. On the facts, there should be no penalty. Glandzis v. Callinicos, 2 Cir., 140 F.2d 111, 114-115; Usatorre v. The Victoria, 2 Cir., 172 F.2d 434, 444.

---

[2] See, e. g., Williston, Contracts, Rev. Ed., § 95A (p. 306); Wigmore, Evidence, 3d Ed., § 2405 (p. 15); Smith v. Ryan, 191 N.Y. 452, 457-458, 84 N.E. 402, 9 L.R.A.,N.S., 461, 123 Am.St.Rep. 609, 14 Ann.Cas. 505; Pimpinello v. Swift & Co., 253 N.Y. 159, 164, 170 N.E. 530.

[3] I refer to the opinion of Judge Learned Hand.

[4] Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239; Seas Shipping Co. v. Sieracki, 328 U.S. 85, 91, 66 S.Ct. 872, 90 L.Ed. 1099; Hume v. Moore-McCormack Lines, 2 Cir., 121 F.2d 336.

[5] Johnson v. The Frank S. Hall, D.C., 38 F. 258; The Samuel Ober, D.C., 15 F. 621, 622; Brown v. Lull, Fed.Cas.No. 2,018; Matern v. Gibbs, Fed.Cas.No.9,273; Sweeney v. Cloutman, Fed Cas.No. 13,685; Dooley v. The Neptune's Car, Fed.Cas.No.3,997; Slocum v. Swift, Fed. Cas.No.12,954; Willard v. Dorr, Fed. Cas.No.17,680; The Lola, Fed.Cas.No. 8,468.

[6] See cases cited in note 5.

[7] Foreman v. J. M Benas & Co., D.C. S.D.N.Y., 247 F. 133, 134, per A. N. Hand, J.

[8] Johnson v. The Frank S. Hall, D.C., 38 F. 258.

[9] See Federal Rules of Civil Procedure, rules 8, 54(c), 28 U.S.C.A.; Esso Standard Oil Co. v. U. S., 2 Cir., 174 F.2d 182; and cases cited in the dissenting opinion in Ira S. Bushey & Sons v. W. E. Hedger Transp. Corp., 2 Cir., 167 F. 2d 9, at 32 note 28.

[10] He may be entitled to a bonus as part of the quantum meruit relief according to 46 U.S.C.A. § 575.