United States Court of Appeals
Ninth Circuit.
Sept. 9, 1949.

**GRIFFIN et al. v. AMERICAN PRESIDENT**
**LINES, LIMITED, et al.**
No. 11944.

United States Court of Appeals
Ninth Circuit.
May 28, 1949.
As Amended Sept. 9, 1949.

Before DENMAN, Chief Judge, and STEPHENS and ORR, Circuit Judges.

Before DENMAN, Chief Judge, and STEPHENS and ORR, Circuit Judges.

DENMAN, Chief Judge.

This appeal is by seven engineer officers and six deck officers, licensed personnel of the Steamer President Harrison on her Voyage No. 55 to Manila, Philippine Islands, and Asiatic ports. Our opinion heretofore filed herein on May 19, 1949, dealt only with the provisions of the unlicensed personnel and this opinion is substituted therefor.

■ Appellee shipowner prepared a rider to the shipping articles which the master and the appellants signed on October 15, 1941, the day before the departure of the President Harrison. If there be more than one rational construction of the rider's terms, they must be construed against appellee.

The pertinent portions of the rider are substantially the same in relevant provisions with those of the unlicensed personnel in the appeals in cases Nos. 11943 and 11946. They are:

"1. The American President Lines agrees to pay an emergency wage increase of 60% of their basic wages to the licensed crew of the SS President Harrison, Voyage 55.

"2. The monthly basic wages as shown in the following agreements between the Pacific American Shipowners Association and the Unions are to be used as the basis for payment of this increase:

| | |
|---|---|
| Masters, Mates and Pilots | Effective December 30, 1939 |
| Marine Engineers | " May 1, 1940 |
| Beneficial Assn. American Communication Association | " July 13, 1940, and as amended by arbitration award of May 3, 1941 |

"3. This emergency wage increase to apply from the crossing of the 180th meridian westbound until crossing the 180th meridian eastbound.

"4. In the event the vessel is interned, destroyed or abandoned as a result of war operations and is unable to continue her voyage, basic wages and emergency wages specified in the collective bargaining agreement between the Pacific American Shipowners Association and the Unions shown above shall be paid to the date the members of the crew arrive in a Continental United States port, and the employees shall be repatriated to a Continental United States port. War bonuses at the rates specified in paragraph 1, hereof, shall be paid while employees are in the war zones defined herein * * *

American President Lines, Ltd."

■ We hold, as in cases Nos. 11943 and 11946, that there is no ambiguity as to the war zone for which a bonus is provided in the last sentence of paragraph 4. Construing this last sentence of paragraph 4 with paragraphs 1 and 3, we hold that paragraph 3 should be construed as follows:

"3. This [war bonus or] emergency wage increase [payable to the licensed crew under paragraphs 1 and 4] to apply [in the war zone existing] from the [licensed crew's] crossing of the 180th meridian westbound until [their] crossing the 180th meridian eastbound."

It is a rational interpretation of paragraph 3 of the rider, drawn by the shipowner, to say that the area in which a *war* bonus is to be paid is a *war* zone. Such an interpretation gives effect to the rider's provisions instead of making nugatory the last sentence of paragraph 4 by holding that no war zone is described in the rider.

Seven of the appellants are members of the Marine Engineers Beneficial Association which made an agreement with appellee's shipowners' association on October 20, 1941, concerning the war bonus of such officers in such voyages as No. 55 here. The six deck officers were members of the Masters, Mates and Pilots Association which had a similar agreement of date October 10, 1941 with the shipowners' association.

We think there is no difference between the rider and the union agreements whatever the latter's date with respect to the war bonus for the licensed officers during internment, other than the percentages of the bonus. The agreements for deck and engineer officers provide:

"Subject to terms and conditions following, war bonuses shall be paid in the respective areas as above defined, as follows: * * *

Area IV 66⅔% of basic wages from the crossing of the 180th meridian, westbound, until recrossing the same meridian eastbound * * *

(4) In the event a vessel is *interned,* destroyed or abandoned as a result of war operations and is unable to continue her voyage, basic wages and emergency wages specified in the collective bargaining agreement between the parties shall be paid to the date that members of the crew arrive in Continental United States ports and the employees shall be repatriated to a Continental United States port. (Emphasis supplied.)

While employees are in the war zone areas described herein war bonuses shall also be paid to them at the rate of 66⅔% of the said basic wages in Areas I to V inclusive, and 25% in Area VI."

"War risk areas wherein war risk bonuses shall be paid licensed officers are set forth as follows: * * *

"Area IV Trans-Pacific voyages to Japan, Philippine Islands, China, Indo-China, East Indies, Malayan Peninsula."

We construe the words of the provisions last above concerning "War risk areas," as follows:

"War risk areas [including those of the war risk of internment of paragraph 4 hereof] wherein war risk bonuses shall be paid licensed officers are set forth as follows:"

We construe the provision for paying the war bonus in Area IV, in connection with the second sentence of paragraph 4, as follows:

"Area IV [A war bonus of] 66⅔% of the basic wages [of engineers and deck officers *"shall"* be paid them] from [their] crossing of the 180th meridian, westbound, until [their] recrossing the same meridian eastbound."

The rider provides for a war bonus of 60% of the basic wage, while the agreements provide for one of 66⅔%. For the reasons stated we think the rider's provision controls.

The same contentions are made by appellees concerning our opinion in Steeves v. American Mail Line, 9 Cir., 154 F.2d 24, and the agreement between the unions and the steamship owners of February 21, 1942, after the appellants had been interned, as in Agnew v. American President Lines, 9 Cir., 177 F.2d 107. For the reasons stated in our opinion on the petition for rehearing there we deem them without merit.

Appellants make the same contention regarding the right to maintenance as in the Agnew case. For the reasons there stated, we regard it without merit.

The decree is affirmed as to the claims for maintenance.

As to the claims of the several appellants for a war bonus it is reversed and the cause remanded for the entry of a decree for each appellant determining for each

the amount of war bonus to which he is entitled pursuant to the above opinion, with interest at seven (7) per cent and for costs.