**CHARMAN et al. v. PAN AMERICAN AIRWAYS, Inc.**

No. 12641.

United States Court of Appeals Ninth Circuit.

May 7, 1951.

Gladstein, Andersen & Leonard, San Francisco, Cal., for appellants.

Athearn, Chandler & Hoffman, F. G. Athearn and Leigh Athearn, all of San Francisco, Cal., for appellee.

Before POPE, McALLISTER* and HASTIE†, Circuit Judges.

HASTIE, Circuit Judge.

In this action, originally filed in a state court, appellants, dismissed employees of appellee, Pan American Airways, have complained that their dismissal constituted a breach of contract. Diversity of citizenship enabled removal to the District Court for the Northern District of California where a trial by court, sitting without a jury, resulted in judgment for the defendant on several grounds. We find it necessary to consider only one of these grounds and the facts relevant thereto.

Contractual obligation is alleged to have resulted from representations originally made by Pan American at about the time appellants, already employed by Pan American in ground operations, were transferred to flying duty as "non-pilot navigators". Later the representations were restated by Pan American in somewhat more precise language to the effect that appellants would be reemployed with certain status in the communications department if the non-pilot navigator positions should be abolished. The parties disagree sharply whether these representations were part of any bargain and whether appellants in fact relied upon them.

One defense was that, whatever legal consequences might otherwise be ascribed to the representations in question, they were abrogated and superseded by a certain arbitration award. The district court sustained this defense and we think rightly so.

■ The district court found that at all times material to this defense, "plaintiffs and each of them continued to designate and authorize * * * Transport Workers Union of America (CIO) to represent the plaintiffs and each of them for purposes of negotiating and signing, on behalf of plaintiffs and others, agreements with the defendant governing the wages, hours and working conditions, including seniority and reinstatement rights". Only as to the authority of the union to include "seniority and reinstatement rights" in the subject matter of bargaining on their behalf do appellants now criticize that finding. However, in the light of the admitted membership of appellants in the union, their admitted designation of it generally as their bargaining agent and the comprehensive area of bargaining by the union for several years without question or objection by appellants, we regard the finding as clearly justified by the evidence.

The court found further that the union, thus authorized, "acting for and on behalf of the plaintiffs and others, entered into an agreement with the defendant, which said agreement submitted to a board of arbitration for decision the question of what rights of seniority or right of retention of employment, if any, the plaintiffs and others might have as against the defendant". It is admitted that this arbitration resulted in an award which provided in part that "Pan American Airways, Inc., shall not be required to retain the professional navigators in its employ, except for work in accordance with the established practice as ground instructors in navigation" and that "upon dismissal each of the professional navigators employed by the Company will be given as severance pay the sum of $2,000 . . . .; they will also receive payment for vacation earned or accrued but not taken and refunds due under the Company insurance and retirement plan". Acting in accordance with the terms of this award, Pan American dismissed a large group of non-pilot navigators, including appellants.

■ On the entire matter of this award, appellants' position is that their "rights of retention" were never submitted to arbitration. In support of this position they point out that almost all of their fellow navigators, unlike themselves, were originally

---

* Sixth Circuit, sitting by special designation.

† Third Circuit, sitting by special designation.

employed in that capacity and had received no assurance of future placement elsewhere. We think the court was justified in finding against them on the question whether their status was submitted to arbitration.

The submission to arbitration and the award on their face cover the future status of the entire non-pilot navigator class of which appellants were members. To this apparent inclusion of their own status appellants did not object. Neither did they advance claims for special consideration during the course of arbitration. Meaning must be attributed to such conduct in the light of the circumstances then existing. At the time of the agreement to arbitrate the status of the navigators it may well have seemed to the advantage of appellants that their future be identified with that of the group as a whole. This was no case of surrender of a plain right of retention for the chance that the same result be achieved by arbitration. The parties had executed no agreement concerning the retention of appellants. There was nothing which on its face purported to be a contract. What appellants now urge as a contract is spelled out by their lawyers' professional analysis of certain circulars and courses of conduct which other lawyers might analyze quite differently. Certainly, to laymen situated as were appellants and their union representatives, hopeful that arbitration might result favorably for all the navigators and uncertain whether appellants had any enforceable special claims, a decision to submit their status to arbitration might have seemed a very wise course.

Finally, it is noted that even in the trial of this case appellants did not attempt to dissociate themselves entirely from the award. They claimed to have been covered by its beneficial provisions, particularly the award of severance pay when their employment as navigators was terminated, but not by the detrimental authority to discharge from the company's service.

The district court had adequate basis for concluding that the question of the future status of appellants with Pan American was in fact submitted to arbitration and covered by the award, and that the submission was made pursuant to adequate authorization.

Appellants urge that this conclusion is inconsistent with what this court has decided in Steeves v. American Mail Line, 9 Cir., 1946, 154 F.2d 24, and Agnew v. American President Lines, 9 Cir., 1949, 177 F.2d 107. The Agnew case need not be discussed in detail since it but reaffirms the doctrine of the Steeves case. In the Steeves case, this court had to decide what war bonus was payable to certain shipwrecked, interned, and later repatriated seamen. Formal and unchallenged shipping articles provided for such a bonus and the calculation of its amount. Subsequently, after the internment of these seamen, and without any dispute having arisen about their rights, the Maritime War Emergency Board, acting pursuant to a general agreement of shipowners and maritime unions, by general order required the payment of certain bonuses to shipwrecked and interned seamen. These bonuses were smaller than those provided under the shipping articles in question. In those circumstances, it was a proper conclusion that the bonus granted by the Board throughout the industry was not intended to supersede the larger bonus for which the seamen in question admittedly had contracted with their employer.

But, in the quite different circumstances of the present case, it is a proper conclusion that an arbitration of the future employment status of a specified group of employees of a particular employer was intended to and did supersede contractual claims of certain members of that group which were disputable and unclear, whatever their ultimate fate at law might have been had not arbitration intervened. The indicated factual differences lead to different results in the two cases.

The judgment below was correct and is affirmed.