## McCREA *v.* UNITED STATES.

No. 249. Argued December 14, 1934.—Decided January 7, 1935.

See 3 F. Supp. 184, 187.

*Mr. John M. Scoble,* with whom *Mr. K. Courtenay Johnston* was on the brief, for petitioner.

*Assistant Attorney General Blair,* with whom *Solicitor General Biggs, Assistant Attorney General Sweeney,* and *Mr. Aubrey Lawrence* were on the brief, for the United States.

MR. JUSTICE STONE delivered the opinion of the Court.

This is a suit under the Suits in Admiralty Act of March 9, 1920, c. 95, 41 Stat. 525, §§ 1, 2 and 6, 46 U. S. C., §§ 741, 742, 746, against the United States as owner and operator of the S. S. American Shipper, brought in the district court for southern New York by petitioner, a sea-, man, to recover for loss of his clothing, for wages, and for

one month's additional wages and other relief provided by R. S. § 4583, because of the failure of respondent to divide the firemen and other employees of the vessel into three equal watches, as required by § 2 of the Seamen's Act of March 4, 1915, c. 153, 38 Stat. 1164, 46 U. S. C., § 673. He also demanded, under R. S. § 4529, as amended by § 3 of the Seamen's Act, double wages, aggregating about $7,000, for failure to pay wages earned in 1928.

The district court at first gave a decree for the value of the clothing, $28.95 for the wages due, and a part of the double wages demanded. 3 F. Supp. 184. On reargument it reduced the amount of the recovery to the value of the clothing and the amount of wages due, on the ground that the demand for double wages was for a penalty for which the United States, as sovereign, is not liable. 3 F. Supp. 187. The Court of Appeals for the Second Circuit took the same view and affirmed the decree. 70 F. (2d) 632.

Certiorari was granted upon a petition which urged that the decision below was erroneous because: (a) the provision for the recovery of double wages is compensatory and not for the imposition of a penalty; and (b), even though a penalty, it is one for which the government is liable by virtue of the provisions of the Suits in Admiralty Act and of the government's waiver of sovereign immunity by engaging in the business of operating vessels in competition with private owners. It is also insisted that the Court of Appeals erred in holding that the decree first entered by the district court, allowing recovery of double wages, was set aside and superseded by its later decree, which allowed recovery only for the amount claimed for loss of petitioner's clothing and for earned wages.

We find it unnecessary to decide the questions raised with respect to the liability of the government for double wages. For upon examination of the record it is apparent that petitioner has failed to establish his right to the

double wages demanded, regardless of the asserted immunity of the government.

Both courts below are in substantial agreement as to the facts, which, so far as now material, may be detailed as follows: Petitioner shipped as a fireman on the S. S. American Shipper on a voyage from New York to London and return; on arrival at London, he demanded of the master his discharge, payment of the balance of wages due, one month's additional pay, and that he be provided with adequate employment on some other vessel bound for New York. As reason for his demand he quoted the titles of § 2 of the Seamen's Act and R. S. § 4583. The master, who was then occupied with his duties in advancing money to members of the crew who were about to take shore leave, offered to pay one-half the wages due, which petitioner refused. The master then told him that he did not know what the cited sections of the statute were about and that he would have to look them up. He asked petitioner to meet him in the office of the American Consul in London, whose address he gave, shortly after noon of the following day, when he would discuss with petitioner the matter of his demand.

Petitioner went to the Consulate the next forenoon and left about half-past eleven, after stating his complaint and being informed by the Consul that he was not entitled to his discharge. He requested that the decision be placed in writing; this was done and sent to him in care of the vessel. The master, who had been busy preparing his papers for entry at the customs house, arrived at the Consulate about two o'clock of the same day and was told that the petitioner had been there and had gone. He then returned to the vessel, where he remained most of the time it was in port, but did not see petitioner again. Petitioner testified that he returned to the vessel, knocked at the master's door that night and again the next morning, but received no answer at either time. He then asked

the chief mate if the master was aboard and the mate said that he didn't know. On that day he left the vessel, without making any further attempt to see the master, or leaving any information which would enable the officers to communicate with him. When he asked the mate for a pass for his clothes he was told that the mate could not give him one and he was not allowed to take his clothes with him. He did not intend to return to the vessel when he left, and never did return. After some weeks in England he purchased passage on another vessel and returned to the United States.

1. The petitioner rests his claim for a month's extra pay and for the cost of his return passage on § 2 of the Seamen's Act and R. S. § 4583. By § 2 a seaman is given the right to demand his discharge and payment of the wages due whenever the master of the vessel fails while at sea to divide the sailors into at least two, and firemen, oilers and water-tenders into at least three, watches. In *O'Hara* v. *Luckenbach Steamship Co.*, 269 U. S. 364, 367, we held that the purpose of this provision was to provide for the safety of vessels at sea rather than to regulate working conditions of the crew, and that it commands division of the specified classes of the crew into watches as nearly equal as the number in each class will permit.

Section 4583 provides that:

" Whenever on the discharge of a seaman in a foreign country by a consular officer on his complaint that the voyage is continued contrary to agreement, or that the vessel is . . . unseaworthy, . . . it shall be the duty of the consul or consular agent to institute a proper inquiry into the matter, and, upon his being satisfied of the truth and justice of such complaint, he shall require the master to pay to such seaman one month's wages over and above the wages due at the time of discharge, and to provide him with adequate employment on board some other vessel, or provide him with a passage on board

some other vessel bound to the port from which he was originally shipped, . . . "

As the government sought no review, either in the Court of Appeals or in this Court, of the determination of the district court that petitioner was entitled to demand his discharge and payment of his earned wages because of the failure to make proper division of the crew into watches, there is no occasion for us to pass on that question. Nor do we decide the further one, which the petitioner raises, whether a seaman is entitled to claim the benefits of § 4583 by reason of a failure to provide equal watches as directed by § 2 of the Seamen's Act. Laying aside that question and possible doubts as to the correct construction of other parts of § 4583, it is plain that by its provisions the Consul or Consular Agent is made the arbiter of the seaman's demand for the month's extra wages and for other relief which it affords, and that his favorable action upon the demand and his discharge of the seaman are prerequisite to any recovery under it. As in the present case the Consul refused to give petitioner his discharge and to certify that he was entitled to the relief demanded, his recovery under that section was rightly denied by the courts below.

2. The seaman's right to double wages for failure of the master to pay wages due is conferred by R. S. §4529.[1]

---

[1] Sec. 4529. The master or owner of any vessel making coasting. voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; and in case of vessels making foreign voyages, or from a port on the Atlantic to a port on the Pacific, or vice versa, within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens; and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without suf-

By this section the master or owner of a vessel is required to pay a seaman his wages within a specified time after the termination of the agreement under which he was shipped or after the time of his discharge, whichever first happens. In the case of vessels making foreign voyages, payment is required within twenty-four hours after the cargo has been discharged or within four days after the seaman has been discharged, whichever first happens. In all cases the seaman is entitled at the time of his discharge to one-third of the balance of wages due him. It directs that " every master or owner who refuses or neglects to make payment in the manner " specified " without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages. . . ."

Since it does not appear in the present case when the cargo was discharged, the time within which the master could pay the wages due and thus avoid liability for double wages cannot be taken to be less than four days from the time of arrival. There is no question of failure to pay one-third of the wages due since petitioner did not avail himself of the master's offer to pay him one-half of his wages. As it has been determined that the petitioner was entitled to his discharge and to payment of the wages due, and as payment was not made within the time specified by the statute, we may assume, for present purposes, that he was entitled to the double pay demanded if the master's failure to pay the wages due was " without sufficient cause."

---

ficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court; but this section shall not apply to masters or owners of any vessel the seamen of which are entitled to share in the profits of the cruise or voyage.  (46 U. S. C. 596.)

We had occasion to pass upon the meaning of this phrase, as used in § 4529, in *Collie* v. *Fergusson*, 281 U. S. 52, where it was held that there was no right to double wages where the failure to pay earned wages was occasioned by the insolvency of the owner and the arrest of the vessel subject to accrued claims beyond her value. After pointing out that the words "without sufficient cause" must be taken to mean something more than the absence of valid defenses to the claim for wages, we said, page 55:

" the phrase is to be interpreted in the light of the evident purpose of the section to secure prompt payment of seamen's wages (H. R. Rep. 1657, Committee on the Merchant Marine and Fisheries, 55th Cong., 2d Sess.) and thus to protect them from the harsh consequences of arbitrary and unscrupulous action of their employers, to which, as a class, they are peculiarly exposed.

" The words ' refuses or neglects to make payment . . . without sufficient cause ' connote, either conduct which is in some sense arbitrary or wilful, or at least a failure not attributable to impossibility of payment. We think the use of this language indicates a purpose to protect seamen from delayed payments of wages by the imposition of a liability which is not exclusively compensatory, but designed to prevent, by its coercive effect, arbitrary refusals to pay wages, and to induce prompt payment when payment is possible."

The statute thus confers no right to recover double wages where the delay in payment of wages due was not in some sense arbitrary, wilful or unreasonable. In view of the many duties imposed, some by law, on the master of a vessel upon arrival in a foreign port, we cannot say that the statute compels him, on pain of subjecting himself or his owner to heavy loss, to make immediate decision of questions of law involved in a seaman's demands,

of whose nature he is left in ignorance. In the circumstances, he did not unreasonably defer action by fixing the following day and the Consul's office as the time and place for his decision. The failure of petitioner to keep the appointment and to communicate with the master again, after rejection by the Consul of petitioner's demand, left the master uninformed whether or not petitioner still persisted in his demand. His departure from the vessel on the following day, without leaving an address, precluded payment of the wages due within the four days which the statute allowed. The case is not one of neglect to pay wages without sufficient cause.

In its opinion before reargument the district court, notwithstanding its conclusion that the master had sufficient cause for his failure to pay wages, ruled that the petitioner was entitled to recover double pay for the number of days which had intervened after the suit was brought. Petitioner argues here that, as there was no excuse for delay in payment after the suit was brought, the duty to pay double wages accrued from that date. But the liability is conditioned by the statute upon the refusal or neglect to pay wages " in the manner hereinbefore mentioned without sufficient cause." The quoted phrase refers to the specified periods within which the seaman's wages are directed to be paid, and the section thus imposes the liability for neglect, without sufficient cause, to pay the wages within the prescribed period. Petitioner seeks, by a more liberal interpretation of the words, to impose the liability for such delay in payment, without sufficient cause, as may occur at any time after an excusable failure to pay within the prescribed period. This possibility is precluded by the further provision of the section that double wages shall be paid for each day " during which payment is delayed beyond the respective periods " within which the payment is to be made. Thus, liability for double

wages accrues, if at all, from the end of the period within which payment should have been made. It must be determined by the happening of an event within the period, failure to pay wages without sufficient cause. The statute affords a definite and reasonable procedure by which the seaman may establish his right to recover double pay where his wages are unreasonably withheld. But it affords no basis for recovery if, by his own conduct, he precludes compliance with it by the master or owner. He cannot afterward impose the liability by the mere expedient of bringing suit upon it.

3. Following the trial of the cause in the district court a decree was entered allowing recovery for loss of petitioner's clothing, for wages and double wages. After the reargument a second decree was entered which did not in terms vacate or modify the first one, but which granted recovery as in its first decree, except for double wages. After the appeal was taken to the Circuit Court of Appeals the district court amended the second decree by the addition of a direction that the first decree be vacated.

The application for rehearing was seasonably made and by granting it the district court retained jurisdiction of the case. The decree entered on the rehearing thus became the final decree in the cause and superseded the earlier one, as the court below held. *Barrell* v. *Tilton*, 119 U. S. 637, 643; see *Wolff Packing Co.* v. *Industrial Court*, 267 U. S. 552.

It is unnecessary to inquire whether, after the appeal was taken, the district court retained jurisdiction to correct its own records by vacating the first decree, which had already become *functus officio*. See *Hovey* v. *McDonald*, 109 U. S. 150, 157, 158.

*Affirmed.*