### BENDER v. WATERMAN S. S. CORPORATION.
No. 23 of 1943.

District Court, E. D. Pennsylvania.
Sept. 30, 1946.

Freedman, Landy & Lorry and Wilfred R. Lorry, all of Philadelphia, Pa., for plaintiff.

Rawle & Henderson and Harrison G. Kildare, all of Philadelphia, Pa., for defendant.

GANEY, District Judge.

Libellant, a seaman, brought this action to recover overtime wages in the amount of One Hundred Sixty-Four Dollars ($164) alleged to be due him for work performed from March 16th to September 30, 1942, in the engine department of the Steamship West Kyska, a vessel owned and operated by the respondent. He also claims two days wages of Five and 84/100 Dollars ($5.84) for each day such payment has been withheld without sufficient cause as provided by section 4529 of the United States Revised Statutes, 46 U.S.C.A. § 596.

From the testimony presented before it, the court makes the following:

### Findings of Fact

1. During the time the wages in question were earned, the libellant was a seaman in the United States Merchant Marine.

2. Respondent is a corporation organized and existing under the laws of the State of Alabama, and at the time it was served with process, was doing business in Philadelphia, Pennsylvania.

3. Respondent owned and operated the SS West Kyska in foreign commerce and during the time in question, the vessel, which was carrying war materials, was under time charter to the United States of America, War Shipping Administration.

4. On February 24, 1942, libellant joined the SS West Kyska as a member of its crew, in the capacity of a wiper, signing articles at Philadelphia, Pennsylvania, for a foreign voyage of twelve months duration, to ports unknown and back to a port of discharge in the United States, for wages at the rate of Eighty seven and 50/100 Dollars ($87.50) per month, plus overtime at the rate of ninety cents an hour for each hour overtime, and bonus payments incidental to his services on the vessel as a wiper.

5. Under the articles, libellant was required to work at regular hours of labor as a wiper from 8:00 A.M. to 12 noon and 1:00 P.M. to 5:00 P.M. on weekdays, and 8:00 A.M. to 12 noon on Saturdays—a total of forty-four hours per week. All work in excess of or outside of these hours (including holidays) constituted overtime.

6. The articles contained, inter alia, the following provisions:

" * * * And the said crew agree to conduct themselves in an orderly, faithful, honest, and sober manner, and to be at all times diligent in their respective duties, and to be obedient to the lawful commands of the said master, or of any person who shall lawfully succeed him, and of their superior officers, in everything relating to the vessel, * * * and in consideration of which service to be duly performed the said master hereby agrees to pay to said crew, as wages, the sum against their names respectively expressed * * *. And it is also agreed that if any member of the crew considers himself to be aggrieved by any breach of the agreement or otherwise, he shall represent the same to the Master or officer in charge of the ship in a quiet and orderly manner, who shall thereupon take such steps as the case may require.

"Any erasure, interlineation, or alteration in the agreement will be void, unless attested by a Shipping Commissioner, Consul General, Consul, or Consular Agent, to be made with the consent of the persons interested."

7. Shortly after the voyage was under way, one of the three firemen on board the vessel was stricken ill and was unable to perform his duties. These duties were assumed by the deck engineer until the ship arrived at the Port of Spain, Trinidad.

8. At the Port of Spain it was determined that the sick fireman would be unable to continue the voyage and he was therefore removed from the vessel, which continued on her voyage without him.

9. On or about March 16, 1942, the Chief Engineer brought the libellant to the Captain's quarters. There the master of the vessel told the libellant that he would be required to work as a fireman and that he would receive a raise in pay from Eighty seven and 50/100 Dollars ($87.50) per month to One Hundred Dollars ($100) per month, with the usual rate of ninety cents an hour for overtime and bonus payments incidental to his services as a fireman.

10. The hours of a fireman were eight hours a day (split into two four-hour shifts), seven days a week—a total of fifty-six hours a week, an increase of twelve hours a week over the time required to be served by a wiper.

11. From March 16, 1942 until the end of the voyage, the libellant performed the duties, worked the hours, and received the regular pay of a fireman.

12. After March 16, 1942, the libellant did not protest being paid fireman's wages—or raise any question relating to his basis of pay by consulting the master or chief engineer—until the end of the voyage.

However, during the voyage, the libellant kept a record of his overtime.

13. Libellant worked a total of two hundred seventy two and one half (272½) dred seventy-two and one half (272½) tember 30, 1942, in the service of the ves-, sel, which, when calculated at the rate of ninety (.90) cents an hour, totaled the sum of Two Hundred Forty-Five and 25/100 Dollars ($245.25).

14. At the termination of the voyage on September 30, 1942, libellant received two discharge slips; one in his capacity as a wiper, the other in his capacity as a fireman—at which time he was paid off on the basis of his earned time and overtime and bonus as a wiper from February 24, to March 15, 1942, and as a fireman for the remaining time.

15. Had the libellant been paid at the rate of a wiper for the hours he put in as a fireman, he would have received One Hundred Sixty-Four Dollars ($164) more in wages than he received as a fireman.

16. The shipping articles, which at the end of the voyage were filed with the office of the Shipping Commissioner, did not show any change with respect to the libellant's capacity or status as a wiper—or his rate of compensation of Eighty seven and 50/100 Dollars ($87.50) per month. However on row twenty six, where the libellant's name appeared, in the monthly allotments column of the articles there has been inserted the penciled notation "To Fire Marc. 16–". There is no indication that the notation was attested to by anyone.

17. There is no entry on the official log indicating any abrogation of or that any change had been made in the shipping articles, or that the libellant assumed the rating of a fireman or was paid the wages of a fireman.

18. The log contained a notation that at the end of the voyage LeRoy F. Bender, who was engaged in the capacity of a *wiper*, was given the rating of very good for conduct and ability.

19. Libellant is not entitled to a penalty payment for failure to make the above overtime.

## Conclusions of Law

1. The matter in controversy is within the admiralty and maritime jurisdiction of the United States, and of this court.

2. Under the terms of the shipping articles, signed by the parties on February 24, 1942, the libellant was employed as a wiper obligating him to work forty-four hours weekly and entitling him to receive a monthly wage of Eighty-Seven and 50/100 Dollars ($87.50) plus ninety cents (.90) per hour for overtime work.

3. The original contract of employment, as evidenced by the shipping articles, entered into by the parties at the beginning of the voyage was not changed, either in fact or in law, with respect to libellant's capacity or status as a wiper or his rate of compensation.

4. There was due and owing to libellant by the respondent, at the termination of the voyage on September 30, 1942, in addition to the monies paid him at that time, earned wages in the sum of One Hundred Sixty-Four Dollars ($164).

5. Under the circumstances of this case, pursuant to section 4529 of the United States Revised Statutes, 46 U.S.C.A. § 596, the respondent is not entitled to any penalty payment for failure to pay the above sum.

6. The libellant is entitled to a decree in the amount of One Hundred Sixty-Four Dollars ($164), with costs, against the respondent.

## Discussion

The respondent contends that (1) during the voyage the loss of one of the three firemen constituted an emergency and that therefore it had a right to "promote" the libellant from wiper to fireman. With the respondent's right to order the libellant to perform the duties of a fireman under the circumstances there is no quarrel. However we cannot agree that the loss of a fireman constituted such an emergency as to justify extreme measures. Where the circumstances so indicate, the master may direct a seaman to undertake any duty which the former believes to be required. However, it seems to us that unless there is great necessity, if compliance with the

master's orders involves the doing of work which requires a higher rate of pay than that for which the seaman contracted to perform, he should receive that pay. The right to wages is founded on services rendered and not merely because of a stipulation in the articles. In The Exchange, D.C., 1838, 8 Fed.Cas. p. 935, No. 4,594, the court held, in allowing a claim for extra wages, that compensation be allowed a seaman for extra services different from those agreed to be rendered in the articles, and carrying a higher rate of wages. The measure of the increased compensation is the difference between the two rates of wages, for the time employed on the extra services. The court went on to say: "Had the master found it necessary or expedient, during the voyage, to promote the libellant to the place of mate, the appointment would, under the settled rules of maritime law, have carried with it a right to corresponding wages, as incident to the new position. Such changes are of frequent occurrence, and are sanctioned by admiralty courts, and the promoted seaman is awarded the wages which appertain to his changed situation." In order for the seaman to be entitled to the increased pay, it is not necessary that he sign the articles again. Buckley v. Oceanic S. S. Co., 9 Cir., 1925, 5 F.2d 545.

By the same token, if the doing of the work is in excess of or beyond regular hours for which the seaman contracted to perform, he is entitled to wages at the prevailing or agreed rate for those extra hours. In The Lakme, D.C., 1899, 93 F. 230, the libellants received payment of the full amount of their wages under the articles at the termination of the voyage. However, the libellants brought suit to recover payment for overtime. The court held, in finding for the libellants, that there were no circumstances of peril creating a necessity for working extra hours and recognized the scriptural rule that the laborer is worthy of his hire and that where the seaman performed the services at the request of the master, there being an agreement for extra compensation, they were entitled to receive the wages promised. In addition the court said: "Seamen may be required to perform extra work in maneuvering the ship or handling cargo by the master at any time, he being the sole judge of its necessity; but when required to do such work not contemplated by their shipping articles, and which is merely for the advantage of the owners or charterers, they are entitled to recover reasonable extra wages therefor, or, if induced by promise of payment, to recover the amount agreed upon."

Strangely enough in the instant case the libellant does not seek the wages of the position to which he is alleged to have been promoted, for taking into consideration the total hours worked by him, that position paid less than that of a wiper. Therefore he seeks the pay at the rate for which he originally contracted to receive.

In opposition, the respondent claims that if the circumstance justified the master in ordering the libellant to perform the duties of a fireman, it was sufficient to alter the basis of his contract with the ship.

Even viewing the evidence in the light most favorable to the respondent, we are unable to conclude that there was a change in the contract between the libellant and the vessel.

By Act of Congress, Revised Statutes, Section 4511, 46 U.S.C.A. § 564, it is provided that an agreement shall be executed, in writing or print, with every seaman whom the ship carries to sea as one of the crew, whch agreement shall be dated and shall contain, among others, the following particulars: "The number and description of the crew, specifying their respective employment, the capacity in which each seaman is to serve, and the amount of wages which each seaman is to receive. It is the shipping articles which constitute the contract of employment by which the ship and the crew are bound.

At the trial the respondent attempted to show that the libellant orally agreed to the change in capacity of wiper to that of fireman. It being a requirement of the law that the shipping articles be in writing, parole evidence cannot legally be received to vary, explain or contradict its express terms, except for fraud or imposition. In the case of The Triton, D.C.,

1832, 24 Fed.Cas. p. 207, p. 14,181 the court clearly set out the practical reasons in support of this rule. The Alice Blanchard, D.C., 92 F. 519. Therefore parole evidence to show that there was a change in the articles must be rejected. The only written evidence that was offered to show that there was a change in the articles with respect to the libellant was the penciled notation "To Fire Mar. 16." However, this notation or insertion was not attested to by a proper official as required by the articles. At most, this notation must be considered merely as a written reminder that on March 16th the libellant was first ordered to assume the duties of a fireman. As an indication that there was a change in the articles, the penciled notation is void. The Disco, D.C., 7 Fed.Cas. 729, No. 3,922.

In spite of the fact that there was no change of wage rate, or the capacity in which he served, made in the articles after libellant's name, and that there was no notation of the (so-called) promotion made in the ship's official log, the respondent contends that the libellant tacitly consented to be promoted to the position of fireman because of his failure to make any protest to the master and his acceptance of the pay of a fireman.

█ It is true that the articles provided that if a member of the crew is aggrieved for any reason he should make known the same to the master or officer in charge of the ship. Be that as it may, it is submitted that although the libellant had a grievance, it was not necessary for him to apprise the master of it, for the master was fully aware of the facts, it was not a situation about which he had no knowledge.

█ The fact that the libellant accepted the pay of a fireman does not preclude him from claiming overtime wages as a wiper; nor is the respondent aided by the fact that the libellant's total wage was in excess of that paid to another wiper. By assuming the duties of a fireman, the libellant increased his hours of work twelve hours per week or approximately fifty hours per month. For this additional time he was paid Twelve and 50⁄100 Dollars ($12.50) in addition to his Eighty-seven and 50⁄100 Dollars ($87.50) rate of wage as a wiper—or an average of twenty five cents (.25) an hour for his overtime; whereas he should have received ninety cents (.90) an hour or approximately Forty-Five Dollars ($45) a month for overtime instead of Twelve and 50⁄100 Dollars ($12.50)—a loss of approximately Thirty-Two and 50⁄100 Dollars ($32.50) per month. The ship owner will not be permitted by use of a bookkeeping subterfuge to mislead a seaman into believing that he has been given an advancement when it becomes apparent on the face of the transaction, when the smoke is cleared away, that it is not an advancement or promotion, but rather a gain to the respondent and a loss to the libellant. The situation is not altered by the fact that if the libellant is paid the amount of wages to which he claims, it will exceed the amount paid to the other firemen.

Since there was no change in the articles, either in fact or in law, the original contract between the parties was still in effect and the libellant is therefore entitled to overtime pay at the rate of ninety cents (.90) an hour for every hour of overtime put in by him. This brings us to the question: Is libellant also entitled to double wages for each day that the overtime wages have been withheld?

The seaman's right to double wages for failure of the master to pay wages due is conferred by Revised Statutes, Section 4529, 46 U.S.C.A. § 596. By this section the master or owner of a vessel is required to pay a seaman his wages within a specified time after the termination of the agreement under which he was shipped or after the time of his discharge, whichever first happens. In the case of vessels making foreign voyages, payment is required within twenty-four hours after the cargo has been discharged or within four days after the seaman has been discharged, whichever first happens. It directs that "every master or owner who refuses or neglects to make payment in the manner" specified "without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages * * *." See McCrea v. United States, 294 U.S. 23, 55 S.Ct. 291, 79 L.Ed. 735.

The question here raised is not free from difficulty and one cannot say that failure to make the payment was without "sufficient cause."

A consideration, therefore, of all the factors in the case persuades me that the above penalty should not be imposed.

Accordingly, judgment is entered against the respondent in the sum of One Hundered Sixty-Four Dollars ($164.), with costs.