**GREGOVICH v. COSMOPOLITAN SHIPPING CO., Inc.**

No. 18964.

United States District Court
E. D. New York.

June 28, 1949.

Harry D. Graham, New York City, for libellant.

Horace M. Gray, New York City (Horace M. Gray and Edward R. Phillips, New York City, of counsel), for respondent.

BYERS, District Judge.

Seaman's action for wages claimed to have been unlawfully withheld when he left the S. S. William Lyon Phelps on July 8, 1948, at Le Havre, France; together with penalty wages, extra wages and transportation charges to this country. The defense is that the libellant deserted his ship on that date and at that place.

The issue inevitably turns upon the effect to be given to a letter bearing the signature of the Master which is as follows:

"Cosmopolitan Shipping Company
"Incorporated
"Steamship Agents and Managers
"42 Broadway, New York 4, N. Y.
"Telephone Digby 4–6363
"S. S. William Lyon Phelps
"Port Le Harve France
"Date July 8, 1948

"U. S. Consul General
"American Embassy
"Paris, France

"Dear Sir:

"This will introduce Mr. Ollie D. Gregovich Purser aboard this vessel. Today July 8, 1948 an attack was made upon Mr. Gregovich by two men, Edward W. Bogden Deck Maint. & John E. Gillson 3rd Mate, of which I did not witness myself.

"All of the above occurred (sic) while the ship was moored to the coal dock in Le Harve. Copies of just how and other circumstances relating to the attack have been mailed into the United States Shipping Commissioner U. S. C. G. at the port of signing the articles.

"Charges of assault are being pressed against the two men listed above. Under the present circumstances in order to avoid any further acts of violence I am suggesting that Mr. Gregovich leave the vessel & proceed to your office for further guidance.

"In the event it becomes necessary I Bert Ray Leavitt Master will hereby consent to paying Ollie D. Gregovich Purser off the ship, for his own protection. Mr. Gregovich has the necessary data explaining this situation with him. His wages will be settled through the main office & through the Shipping Commissioner U. S. Coast Guard.

"B R Leavitt
"Bert Ray Leavitt
"Master
"Ollie D. Gregovich
"Ollie D. Gregovich
"Purser

The reasons for according this paper evidentiary status should be stated: It is consistent with the somewhat wavering and uncertain nature of the Master Leavitt as revealed by him on the witness stand, for it does not disclose a purpose to procure the discharge of the libellant for cause, Title 46 U.S.C.A. § 682, but rather to put the latter in a position to seek it for himself "for his own protection".

The expressions employed in the closing paragraph are difficult to reconcile with a ship Master's understanding of the seaman's rights in the event that the Consul should grant the discharge; but Leavitt impressed me as a man who would write just such a letter, expecting it to lead to affirmative action by the Consul, at libellant's instance.

I am satisfied that the Master's signature to this letter (and the two copies in evidence) is genuine, in spite of the equivocal testimony of Leavitt on the subject.

The argument against the letter is that it was composed by libellant who was the ship's Purser, and slipped under other papers and signed, either in blank, or otherwise inadvertently.

The recital of the assault and alleged pending charges could have been fabricated by libellant for his own purposes, but to compose a completely satisfactory document he probably would not have employed the expression "His wages will be settled through the main office & through the Shipping Commissioner U. S. Coast Guard". That would constitute a subtlety of technique on libellant's part for which there is no justification in his demeanor or testimony.

It should be said that the incidents of this voyage which began at Philadelphia on June 17, 1948, involve matters concerning the libellant's conduct which I forbear to recite, that could well have created in the Master's mind a desire to acquiesce in an untroubled separation of the libellant from the ship. This young man served four years in the Navy during the War, and gained an honorable discharge; no good purpose would be served by reciting in this decision the details of his conduct on this and a prior voyage on the same ship, for it is to be hoped that he will make a construc-

tive use of the years which lie before him, and thus compensate for a series of episodes which he may some day come to regret.

Such being the posture of affairs on July 8, 1948, it becomes necessary to consider whether it is possible to revert thereto for the purposes of this case.

The subsequent events were that libellant left the ship on July 9th at Rouen where she arrived from Le Havre. He went ashore with his personal effects, not intending to return, which is the basis of the charge of desertion. That conduct, standing alone, would be fatal to the libellant's cause, but in view of the letter which has been set forth, I do not think it can be so viewed. Had the libellant applied to the Consul at either Le Havre or Paris for his discharge, that official could have proceeded to function as the cited law contemplates. He did not do that, nor did he deliver a copy of Exhibit 2 to any Consul, but says he telephoned to the American Embassy in Paris, was told that the Consul was absent from his office, and that an unidentified secretary also told him that, since he said he needed no assistance (having funds), he was free to go. Thereupon he took plane passage for New York and arrived on July 13, 1948, and promptly consulted his present counsel.

It will thus be seen that neither the Master nor the libellant followed a consistent course of conduct which was calculated to bring about the discharge of the latter; and while it might satisfy the letter of the law to hold that libellant's conduct was more consistent with desertion than anything else, it is thought that the ends of justice do not require so rigid a disposition of the controversy.

There are involved not only a sum of money, but the status of a man who has shown some aptitude for a seafaring career.

For these reasons, it seems that the Court may well undertake to adjudicate the cause as though it had been submitted at the close of July 8, 1948, without reference to later happenings which at best are entirely negative. Thus: There was no charge of desertion logged in conformity with Title 46 U.S.C.A. § 701. Nor was

such a charge made to the Coast Guard when the ship arrived back in the United States on August 7, 1948. The amount of libellant's wages, agreed to be $205.92 subject to tax withholdings of $26.58, has been carried in respondent's financial records as "unclaimed wages".

■ If the controversy can fairly be disposed of as suggested, the situation can be thought of as though both parties had acted as I think they intended to act on the 8th day of last July. The libellant would have proceeded to the Consul at Le Havre and have asked for his discharge, and the Master would have interposed no objection, and accordingly the former would have been paid off in the sum above stated. So much the Court can do at this time, on the theory that the mutual purpose of the parties should be carried into effect.

The omissions on the part of the Master which have been stated could be reconciled with an awareness that he had written and signed the letter above referred to; the failure of the libellant to make delivery of the letter to a Consul, however, cannot be explained to the satisfaction of the Court. That omission impairs the authenticity of the letter, and so this disposition of the cause is not entirely convincing to the writer of this opinion. However slight the margin of choice in favor of the disposition above stated, it is believed to be warranted in view of all the circumstances involved.

As to the items of extra and penalty wages and transportation, no such difficulty is encountered.

The libellant has not brought himself within Title 46 U.S.C.A. § 594. His discharge was never accomplished, largely because he did not see fit to apply for it to any Consul. Had he done so, that would have been upon his own consent. In connection with such application, the Consul could have informed himself as to whether the discharge would have been "without fault upon his part justifying such discharge". Had such an inquiry been made and had the same facts been brought to light as were developed at this hearing, it is clear that libellant would have been

awarded only his wages to date of the discharge. This Court cannot conclude that such a discharge would have been improper, and no wages in addition to $205.92, subject to proper deductions, will be awarded.

In this connection, it is proper to discuss penalty wages; they arise upon failure to pay at discharge, Title 46 U.S.C.A. § 596.

Had the discharge been accomplished at libellant's instance, pursuant to the invitation of Exhibit 2, and had the Master at that time refused to pay libellant's wages, the penalty would have been incurred. But there was no such happening. The parties created a kind of modus vivendi which contemplated future steps which were not taken. No penalty should be exacted or would be appropriate. Compare McCrea v. United States, 294 U.S. 23, 55 S.Ct. 291, 79 L.Ed. 735.

The ship paid off in Norfolk on August 8, 1948, and Exhibit 9 indicates that libellants' wages were turned back to respondent as "unclaimed wages" by the Coast Guard.

The amount due was offered to libellant's attorney under date of August 25, 1948, if his client would sign an appropriate voucher, but that was declined on the following day, the libel having been filed before receipt of the said offer.

In view of the happenings in Norfolk, it is not clear to this Court that there was a refusal to pay the wages of libellant.

The transportation charge of $375.00, including plane fare from Paris, is not sought to be justified as such, nor has libellant shown that, if he had applied for his discharge to a Consul, he would have been able to demonstrate that it should be granted because of "injury or illness, incapacitating him for service", Title 46 U.S. C.A. § 683. That item is not allowed.

Sight has not been lost of the expense incurred by respondent in causing libellant's work as purser on the return voyage to be performed by its office staff. That is not thought to be the same thing as hiring another purser to take libellant's place. Those who did his work were already on respondent's pay-roll, and their presence in Norfolk was not caused by his leaving the ship as he did, except in small part.

The libellant may have a decree for $205.92 less legal withholdings for tax purposes of $26.58, or $179.34, with interest from July 8, 1948, with costs.

Settle decree, and findings if desired.