Charles T. KELLEY, Plaintiff,

v.

The UNIVERSITY OF HAWAII, as Owner of the Teritu, and Warren Okkerse, Deputy for Marine Affairs, University of Hawaii, Defendants.

Civ. No. 2464.

United States District Court
D. Hawaii.

March 30, 1966.

Joseph A. Ryan, Honolulu, Hawaii, for plaintiff.

Bert T. Kobayashi, Atty. Gen., Roy T. Takeyama, Deputy Atty. Gen., State of Hawaii, for defendants.

TAVARES, District Judge.

Plaintiff sues for wrongful discharge from his employment by the University of Hawaii on its oceanographic vessel Teritu, and to recover a penalty pursuant to 46 U.S.C. § 596.

Plaintiff was originally employed as a seaman on the Teritu, and thereafter performed the duties of Chief Engineer. Early in December, 1965, plaintiff was told by agents of the defendant that his services would no longer be required as Chief Engineer. Plaintiff understood this to mean that he was being completely discharged from the defendant's employ. Agents of the defendant have testified that they wanted to retain plaintiff's services as a seaman, but that they were not able to continue his employment as Chief Engineer because he lacked the license appropriate to that position.

Considering the evidence as a whole, it is the finding and conclusion of this Court that the plaintiff was not wrongfully discharged by the defendant.

Section 596 provides in material part:

"The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination under the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; * * * Every master or owner who refuses or neglects to make payment in

the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed * * *."

But 46 U.S.C. § 544 provides that none of the provisions of certain sections, including § 596,

" * * * shall apply to * * * vessels engaged in the coastwise trade, except the coastwise trade between the Atlantic and Pacific coasts * * *."

 Plaintiff produced no evidence that the Teritu traveled to any foreign ports. The evidence showed that the vessel made trips beyond the three-mile limit, but always between ports of the United States and its possessions. Therefore, the Court finds that the Teritu was engaged in coastwise trade, and that it was not engaged in coastwise trade between the Atlantic and Pacific coasts.

Accordingly, plaintiff has failed to bring himself within the provisions of Section 596.

Even if Section 596 were applicable to the plaintiff, this Court would be compelled to find on the evidence presented, that there was no unreasonable delay on the part of the defendant in delivering to plaintiff the pay admittedly due him at the time his services for the University were terminated.

Plaintiff's final pay check was available on December 15 or 16, 1965; there is a conflict in the testimony with regard to whether plaintiff first demanded his pay on December 3 or December 6, 1965. Plaintiff recollects that he demanded his pay on December 3, from Mr. Thomas D. Brady, whose responsibilities include payroll matters at the University of Hawaii, and plaintiff relies upon a document entitled "Payroll for Personnel Services," dated December 3, 1965, which formed the basis for the processing of his pay check. Mr. Brady testified that his conversation with the plaintiff took place on December 6, 1965, and explained the December 3 date on the document in the following manner:

 He testified that the document was essentially completed on December 3, 1965, but had not been finally approved; then on Monday, December 6, after plaintiff had demanded his pay, the document was revised to include information for payment to the plaintiff. Mr. Brady's testimony is corroborated by certain changes that appear on the face of the document, and the Court is inclined to accept his recollection as accurate. In either event, however, the Court concludes that the period of time elapsing between the point when the plaintiff demanded his pay and the time when he was paid is not unreasonable, in the light of the accounting practices and payroll system of the defendant.

The penalty provision on which plaintiff relies has been interpreted to mean that the penalty should apply only where payment is withheld or delayed wilfully or unreasonably. In McCrea v. United States, 294 U.S. 23, 30, 55 S.Ct. 291, 294, 79 L.Ed. 735, the Supreme Court said, with reference to this penalty provision:

"The statute thus confers no right to recover double wages where the delay in payment of wages due was not in some sense arbitrary, wilful, or unreasonable."

And see The Herbert L. Rawding, D.C., 55 F.Supp. 156, 163:

"The penalty imposed by this statute is intended to apply where the delay in payment of the wages was wilful or unreasonable."

It was customary for plaintiff and others similarly situated to receive their pay checks approximately two weeks after the close of the appropriate pay period; plaintiff had previously made no complaint of unreasonable delay.

The evidence before this Court indicates that when plaintiff demanded his pay, efforts were made by agents of the defendant to diminish the amount of time that normally was required for obtaining a check on this particular payroll, and that in fact the time involved was less than normal. It is the opinion and con-

clusion of this Court that the delay of which plaintiff complains was neither wilful nor unreasonable.

Therefore, it is ordered that the Complaint be, and the same is, hereby dismissed.