**Reginald LEWIS, Plaintiff-Appellant,**

v.

**HUDSON WATERWAYS CORPORATION, Defendant-Appellee.**

**No. 711, Docket 73–2684.**

United States Court of Appeals, Second Circuit.

Argued March 25, 1974.

Decided April 15, 1974.

Herbert Lebovici, New York City (Lebovici & Safir, New York City, on the brief), for plaintiff-appellant.

Victor S. Cichanowicz, New York City (Cichanowicz & Callan, New York City, on the brief), for defendant-appellee.

Before KAUFMAN, Chief Judge, and SMITH and ANDERSON, Circuit Judges.

PER CURIAM.

Reginald Lewis joined the SS Transorleans at Freeport, Bahamas on January 11, 1967, as an assistant engineer. Chief Engineer Lewis Molnar, a friend who had found the job for him, had told the ship's Master that Lewis possessed the requisite credentials to serve as a third engineer. After the ship left Freeport en route to Bombay, India,

however, the Master discovered that Lewis had no such papers and had to sign him on as an uncertified utility engineer.

On March 7, Lewis injured his back while repairing the ship's boiler. Prior to the injury, he had stood watch and accumulated overtime, which were duly recorded in the ship's engineering log by his friend, Molnar. After the injury, he seldom worked, but Molnar apparently continued to record overtime for him. Lewis was discharged for medical attention at Balboa, Canal Zone, April 15. The Master had no cash available to pay him but offered him a voucher showing salary due of $3,965.69, and the total hours worked, including overtime, for presentation to the paymaster in New York. Lewis accepted the voucher and signed a release of all of his claims against the ship.

The Master testified that at discharge Lewis asked that his salary be paid over to Molnar and so endorsed the voucher. The Master further stated that he had instructed Lewis to implement this action by an assignment to Molnar. Sometime after Lewis left the ship, Molnar presented such an assignment to the Master and subsequently received the amount due. Lewis, however, claims he never made any assignment and that he always intended to receive personal payment in New York.

Two days after discharge, Lewis presented the voucher to the paymaster in New York City who refused to honor it pending instructions from the ship. On April 20, he informed Lewis that the ship had already paid Molnar. Lewis telephoned Molnar, who telegraphed $3,000 to him but retained $965.69 as a commission for having procured the job for him.

Lewis did not protest the ship's payment to the Chief Engineer until two months later when he instituted a suit claiming unpaid wages totaling $965.69 and a double-wage penalty under 46 U.S.C.A. § 596 for every day that the ship "unreasonably" withheld his salary.

During pre-trial discovery, the ship learned for the first time that Lewis, in fact, had been bedridden when the ship's records showed that he had been working overtime. Lewis, however, contends that he worked the total hours recorded, although he admits he did not work them at the times indicated.

The only issues below were whether the voucher accurately stated the wages due, and whether the ship acted reasonably by paying Lewis' wages to Molnar.[1]

The trial court allowed the ship to introduce Lewis' admission that he had not worked at the actual times recorded and Lewis appeals, claiming that this evidence was barred by 46 U.S.C.A. § 642 which provides that "no deduction from the wages of any seaman" shall be allowable if not stated in the voucher presented at discharge. This provision is to be read in connection with the Seamen's Acts, 46 U.S.C.A. § 591 et seq., which look towards "payment to the seaman by his employer, at the termination of the employment, of all his earned wages, without any deductions except those which are expressly authorized by statute." Shilman v. United States, 164 F.2d 649, 650–651 (2 Cir. 1947), cert. den. 333 U.S. 837, 68 S.Ct. 608, 92 L.Ed. 1122 (1948).

To comply with the statutes the master must present the voucher to the seaman forty-eight hours prior to discharge in order to allow him to protest to the ship, the Coast Guard, or the United States consul if such wages are reduced for reasons not permitted by statute. 1 Norris, The Law of Seamen § 536 (1970). If the master were to certify a voucher and then refuse to pay a seaman discharged in a distant port, he "easily could wipe out every cent of a seaman's earned wages." Isbrandtsen Company,

Inc. v. Johnson, 343 U.S. 779, 788, 72 S. Ct. 1011, 1017, 96 L.Ed. 1294 (1952). After payment, the ship may bring an action for fraud against a seaman like Molnar or Lewis for reporting inaccurate hours, but ordinarily a court will not allow a ship to introduce evidence of hours actually worked to disprove the accuracy of its own voucher in a suit for wages.

■■ The trial judge's error in admitting this evidence, however, did not prejudice Lewis because the jury necessarily found the voucher correct when it awarded the salary balance of $965.69. Lewis' contention that the evidence of the false overtime caused the jury to deny him the double-wage penalty is unpersuasive. The withholding at discharge was caused by the purported assignment, not by the overtime inaccuracies which only became apparent at the commencement of trial; and although the jury in special verdicts found the assignment invalid, it also specifically found that the ship had not acted unreasonably in paying Molnar the sum due Lewis. Moreover, the ship's claim that it had a basis for withholding any further payments when it learned of the overtime inconsistencies was rejected by the jury when it found the voucher valid.

The penalty, now approximately $90,000, is only to be imposed for " 'arbitrary and unscrupulous action,' " McCrea v. United States, 294 U.S. 23, 30, 55 S.Ct. 291, 79 L.Ed. 735 (1935), and ". . . [t]here is neither justice nor policy in aiding [this plaintiff] to catch at penalties, [when he has] suffered no wrongs." Petterson v. United States, 274 F. 1000 (S.D.N.Y.1921) (L. Hand, J.).

The judgment of the district court is affirmed.

1. This appeal follows two trials in the district court. Lewis also appeals an order by Judge Bonsal granting Hudson Waterways' motion for a new trial following the initial trial in this case. That order is affirmed.

See, Portman v. American Home Products Corp., 201 F.2d 847 (2 Cir. 1953). All reference to the "trial court" in the text of this opinion refers to the second trial before Judge Griesa.