DENNIS, Circuit Judge,
dissenting.
Because I believe that the district court erred in granting the Bank of Scotland’s motion for partial summary judgment, I respectfully dissent.
On April 22, 1998 the seamen for the M/V MARIA filed suit in Louisiana state court against Golden Lines Shipping, Inc., the owner of the vessel, and Kosmas Marine Line, Inc., the manager of the vessel, for unpaid wages. The state court issued a writ of attachment and the M/V MARIA was seized by the sheriff on April 22. The Bank of Scotland, holder of a preferred mortgage lien on the M/V MARIA, also filed suit in April 1998 in federal court to foreclose its mortgage on the vessel. An arrest warrant issued by the district court was served on the vessel on April 29, 1998. The following month, Golden Lines Shipping and Kosmas Marine Line removed the seamen’s suit to federal court. The two causes of action were consolidated and the seamen intervened in the federal action.
The Bank of Scotland subsequently purchased the vessel at an auction conducted by the United States Marshal for $3.7 million, an amount less than the outstanding debt secured by the mortgage. According to the Bank of Scotland, the seamen’s maritime liens for back wages and penalty wages were subordinate to its mortgage lien and would not be paid because the sale proceeds were insufficient to satisfy the mortgage lien. Although the district court determined that the seamen’s maritime liens were not subordinate to the Bank of Scotland’s preferred mortgage lien, the district court also ruled that the maritime lien for penalty wages was not enforceable against the proceeds of the vessel sale because the owner had no interest in the vessel or the proceeds after the auction sale. The district court based its decision on the penalty wage statute which states, in pertinent part, that *277 “[w]hen payment is not made as provided ... without sufficient cause, the master or owner shall pay to the seaman 2 days’ wages for each day payment is delayed.” 46 U.S.C. § 10313(g). Based on the language in the penalty wage statute, the district court refused to enforce the seamen’s maritime hen against the sale proceeds because neither the master nor owner had an interest in the proceeds.
The seamen contend that they have a maritime lien which is superior to the Bank of Scotland’s mortgage lien based upon the ship mortgage act. The ship mortgage act does not limit liability for maritime liens to a vessel’s owner or master. Rather, it states that when a vessel is sold to enforce a preferred mortgage lien all claims in the vessel existing on the date of the sale are terminated. See 46 U.S.C. § 31326(a). These terminated claims “attach!], in the same amount and in accordance with their priorities to the proceeds of the sale”, 46 U.S.C. § 31326(b), except that preferred maritime liens have priority over a preferred ship mortgage. Preferred maritime hens include “a maritime lien on a vessel ... for wages of the crew of the vessel.” 46 U.S.C. § 31301(5)(D). A penalty wage hen has the same priority as a wages hen. See Collie v. Fergusson, 281 U.S. 52, 54, 50 S.Ct. 189, 74 L.Ed. 696 (1930); Peterson v. S.S. WAHCONDAH, 331 F.2d 44, 48 (5th Cir.1964).
In addition to the penalty wage statute, the district court cited two cases in determining that penalty wages should not be assessed against a party that is neither the owner nor the master of a vessel. Both cases are distinguishable from the facts of the present appeal. In Caldwell v. Solus Ocean Systems, Inc., 734 F.2d 1121, 1122 (5th Cir.1984), a Solus employee who worked on a vessel that Solus chartered brought suit against Solus pursuant to the penalty wage statute. The court determined that the penalty wage statute did not extend to an employer. See id. (“Because it is undisputed that Solus was not the master or the owner of the vessel on which Caldwell was employed, but was Caldwell’s employer, the sole issue before us is whether section [10313] extends to ‘employers’ as well as those parties enumerated in the statute. We hold that it does not.”). Likewise, Caparelli v. Proceeds of Freight, 390 F.Supp. 1345 (S.D.N.Y.1974) did not state that seamen were not entitled to assert their maritime lien for penalty wages against the proceeds from the sale of a vessel. The district court refused to allow the seamen to amend their pleadings to state a cause of action for penalty wages under 46 U.S.C. § 596 [now § 10313] directly against a ship mortgagee because the statute does not grant a cause of action against the holder of a mortgage on a vessel, rather than a vessel owner or master. See id. at 1351.
The majority opinion attempts to justify the result of the district’s court judgment on the ground that the seamen are limited to a suit in personam to satisfy their maritime lien. However, it is well established that seamen may seek to satisfy their liens by both in rem and personam proceedings:
[M]ariners’ wages, salvage, freight and bottomry are maritime causes of action [and] the court of admiralty has jurisdiction and may use any of its appointed modes to give the party any remedy to which the law entitles him. The substratum of the action is the liability of one party to respond to another and the court may enforce it against the person, or against a particular portion of his property, or against his property generally, as the law may have provided the right. If the claim, which is the cause of action, be, by law, alien upon a vessel, her cargo, freight, the proceeds of the same, or the remnants and surplus thereof, the court may enforce that hen by a suit in rem, or, without reference to the hen may compel the party himself to pay the demand. Remedies in rem and in personam may co-exist or one may be independent of the other, e.g., a right of action in personam may be *278 recognized where no lien is given by the maritime law.
2 Benedict on Admikalty § 25, at 2-18 (1999). Hence, the seamen are not limited to a suit in personam to satisfy their maritime lien. Whether the proceeding is in rem or in personam has no bearing in our determination of whether the seamen’s maritime lien has priority over the Bank of Scotland’s mortgage lien following the sale of the vessel.
Since the in rem/in personam distinction does not resolve the merits of this case, the court must analyze the terms of the penalty wage statute and the ship mortgage act. Equilease Corp. v. M/V SAMPSON, 793 F.2d 598 (5th Cir.1986), discussed the history of the ship mortgage act. Equilease Corp. states, in pertinent part:
The federal maritime lien is a unique security device, serving the dual purpose of keeping ships moving in commerce while not allowing them to escape their debts by sailing away. The lien is a special property right in the vessel, arising in favor of the creditor by operation of law as security for a debt or claim. The lien arises when the debt arises, and grants the creditor the right to appropriate the vessel, have it sold, and be repaid the debt from the proceeds. Thus the maritime lien may be defined as a property right that adheres to the vessel wherever it may go. Such a lien has been held to follow the vessel even after it is sold to an innocent purchaser. The maritime lien is a lien on the vessel, “and only indirectly, inasmuch as it conflicts with the owner’s rights in the vessel, it is connected with the owner.” The maritime lien concept thus somewhat personifies a vessel as an entity with potential liabilities independent and apart from the personal liability of its owner ... The Act provides a right to a federal maritime lien to “any person furnishing repairs, supplies, ... or any other necessaries, to any vessel .... ” ... Necessaries are the things that a prudent owner would provide to enable a ship to perform well the functions for which she has been engaged. These “things” may be money, labor and skill, and personal services as well as materials.
Id. at 602-03 (internal citations omitted). Thus, there is a distinction between the creation and the enforcement of a maritime lien. See also The NESTOR, 18 F. Cas. 9, 14 (C.C.D.Me.1831), which states, in pertinent part:
If seamen’s wages were by the contract not payable until ten days after the voyage was completed, it would not disturb the hen on the ship for those wages. The hen has in all such cases an inchoate existence from the moment of the contract, and attaches sub modo on the ship. The lien for seamen’s wages attaches ordinarily on the ship during the voyage, although no wages are strictly due until the end of the voyage. A sale of the ship, pending the voyage, would not defeat this inchoate hen; and when the voyage was completed, the hen would have relation back to the commencement of the voyage.
By furnishing their labor and personal services to the M/V MARIA, the seamen were entitled to a maritime hen which was created by operation of law when their wages were due and payable. This lien “fohow[ed] the vessel even after it [was] sold to [the Bank of Scotland].” Based upon the plain language of the ship mortgage act, the seamen’s penalty wage hen attached to the proceeds from the sale of the vessel as a preferred maritime hen with priority over the Bank of Scotland’s preferred ship mortgage. See 46 U.S.C. § 31326(b)(1). Thus, the district court erred in ruling that the seamen’s maritime hen for penalty wages was not enforceable against the proceeds of the vessel.
The seamen’s maritime hen for penalty wages, in excess of $6.8 million, exceeds the hen for their unpaid wages of $260,618. In Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 *279 (1982), the petitioner was entitled to more than $800,000 in penalty wages as a result of the improper withholding of $412.50 by the vessel owner. The vessel owner argued that a literal interpretation of the penalty wage statute “would produce an absurd and unjust result which Congress could not have intended.” Griffin, 458 U.S. at 574, 102 S.Ct. 3245. The Supreme Court rejected this argument, stating that:
In refusing to nullify statutes, however hai'd or unexpected the particular effect, this Court has said: “Laws enacted with good intention, when put to the test, frequently, and to the surprise of the law maker himself, turn out to be mischievous, absurd or otherwise objectionable. But in such case the remedy lies with the law making authority, and not with the courts.” ... It is enough that Congress intended that the language it enacted would be applied as we have applied it. The remedy for any dissatisfaction with the results in particular cases lies with Congress and not with this Court ... As we explained earlier, a condition to the imposition of the wage penalty is a finding that the delay in payment is “without sufficient cause.” To the extent that the equities of the situation are to be considered, they bear on that finding, and not on the calculation of the penalty period once that finding has been made.
Id. at 575-77, 102 S.Ct. 3245 (internal citations omitted).
In addition, neither the majority opinion nor the district court considered whether there was a genuine issue as to the material fact of the owner’s insolvency when the unpaid wages began to accrue and the seamen’s maritime lien attached to the owner’s vessel. The seamen raised a genuine issue of material fact concerning the solvency of the vessel owner that should have permitted the case to go to trial.
A district court’s decision to grant or deny summary judgment is reviewed de novo, applying the same criteria employed by the trial court in the first instance. See Burge v. Parish of St. Tammany, 187 F.3d 452, 464 (5th Cir.1999). Summary judgment is proper when the pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, demonstrate that no genuine issue exists as to any material fact and that the mov-ant is entitled to judgment or partial judgment as a matter of law. See Fed. R.Civ.P. 56(c); Burns v. Harris County Bail Bond Bd., 139 F.3d 513, 517-18 (5th Cir.1998). We view all facts in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant’s favor. See Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir.1997). If the non-movant sets forth specific facts in support of allegations essential to her claim, a genuine issue of material fact is presented and summary judgment is inappropriate. See id.
Seamen must be paid their wages within 24 hours after the cargo has been discharged or within four days after the seamen have been discharged. See 46 U.S.C. § 10313(f). If the seamen do not receive their wages “without sufficient cause, the master or owner shall pay to the [seamen] 2 days’ wages for each day payment is delayed.” 46 U.S.C. § 10313(g). The Supreme Court discussed the requirements for payment of delay wages in Griffin. Two conditions must be satisfied before seamen are entitled to delay wages:
First, the master or owner must have refused or failed to pay the seaman his wages within the periods specified. Second, this failure or refusal must be “without sufficient cause.” Once these conditions are satisfied, however, the unadorned language of the statute dictates that the master or owner “shall pay to the seaman” the sums specified “for each and every day during which payment is delayed.” The words chosen by Congress, given their plain meaning, leave no room for the exercise of discretion either in deciding whether to exact payment or in choosing the period of *280 days by which the payment is to be calculated.
Griffin, 458 U.S. at 570,102 S.Ct. 3245.
In determining the seamen’s entitlement to delay wages, the district court should not consider whether there was sufficient cause for delay in payment after a suit has been filed. Rather, “liability for double wages accrues, if at all, from the end of the period within which payment should have been made.” McCrea v. United States, 294 U.S. 23, 31-32, 55 S.Ct. 291, 79 L.Ed. 735 (1935). The mere fact of late payment of wages does not entitle the seamen to delay wages, however. If wages are not paid in a timely fashion “due to the insolvency of the owner and the arrest of the vessel”, the owner has shown sufficient cause for nonpayment and is relieved of statutory liability for delay wages. Collie v. Fergusson, 281 U.S. 52, 56, 50 S.Ct. 189, 74 L.Ed. 696 (1930).
The district court had evidence that the seamen were not paid in a timely fashion and that the owner did not have sufficient cause for nonpayment of wages when the wages were owed. The seamen introduced evidence that they were not paid wages on two occasions, March 24, 1997 and April 20, 1998. They also produced audited financial statements for the M/V MARIA stating that the vessel’s profit in 1997 was $113,000. Based upon these financial statements, the seamen argue that the owner was not insolvent on March 24, 1997 when they should have received their wages. The Bank of Scotland arrested the M/V MARIA on April 29, 1998 to foreclose on its mortgage. Thus, the evidence indicates that on March 24, 1997, one of the dates when wages were owed to the seamen, the owner of the vessel was not insolvent and the M/V MARIA had not been arrested. At that time, the seamen’s maritime lien attached and the owner had an interest in the vessel. The owner failed to show sufficient cause for nonpayment and has not been relieved of statutory liability for delay wages according to Collie.
The district court failed to analyze the requirements for payment of delay wages and mistakenly considered the insolvency of the vessel owner at the time of the sale as being crucial, not when the maritime lien attached upon the penalty wages becoming due and payable to the seamen. Based upon these shortcomings, I would REVERSE the judgment of the district court and remand the case for a trial on the disputed material issues of fact.